THE STATE v. THOMAS BOND, Appellant.

Division Two, December 12, 1905.

1. **ALIBI: Instruction: Evidence.** An instruction on the question of alibi should not be given unless there is a reasonable doubt as to defendant's presence at the time and place of the crime, or some evidence tending that way. And if defendant desired an instruction on this theory, he should have requested it of the court, and on its refusal to so instruct, saved an exception.

2. **SHOOTING WITH INTENT TO KILL: Sufficiency of Evidence.** The evidence in this case, which was a prosecution for shooting with intent to kill, is held sufficient to take the case to the jury, and the court properly refused an instruction in the nature of a demurrer to the evidence.

3. **INSTRUCTION: Reasonable Doubt.** The court by its instruction having fully covered the subject of reasonable doubt, an instruction asked by defendant, defining these terms, was properly refused. Definitions of "reasonable doubt" tend to confuse rather than to enlighten the jury.

4. **CONTINUANCE: Defective Affidavit.** An affidavit for a continuance, based upon the ground of absent witnesses, which fails to allege that defendant is "unable to prove such facts by other witnesses whose testimony can be as readily procured," or that "the application is not made for vexation or delay, but to obtain substantial justice," is fatally defective, and the application is properly overruled.

5. **SHOOTING WITH INTENT TO KILL: Indictment: Assault: Surplusage.** An indictment under the statute (sec. 1847, R. S. 1899) for shooting with intent to kill need not allege an assault, and if it does so, such allegation may be rejected as surplusage.

Appeal from Ozark Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*George W. Boone* for appellant.

(1) The court erred in refusing to instruct on the question of alibi. State v. Koplan, 167 Mo. 298; State v. Taylor, 118 Mo. 153; State v. Adair, 160 Mo. 391; State v. Hale, 156 Mo. 102; State v. McGinnis, 158 Mo. 105. (2) The court erred in refusing to give the instruction asked by the defendant in the nature of demurrer to the evidence. (3) The court erred in refusing instruction 2, asked by the defendant. This instruction properly defined reasonable doubt, and the jury should have been instructed as to its meaning in a legal sense. Kelley, Criminal Law, sec. 397; Hughes, Criminal Law, sec. 2488; State v. Clark, 147 Mo. 20. (4) The court erred in overruling defendant's application for a continuance. The statute was fully complied with, and all the necessary requirements of the law appeared in the application. Sec. 2600, R. S. 1899. (5) The information is fatally defective; therefore, the motion in arrest of judgment should have been sustained. The information fails to allege that the assault was feloniously made. State v. Clayton, 100 Mo. 516; State v. Norman, 136 Mo. 1.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) The court did not err in overruling defendant's application for a continuance. The application

was based upon the the ground of absent witnesses and the affidavit fails to state that the defendant is "unable to prove such facts by any other witness whose testimony can be as readily procured," or "that the application is not made for vexation or delay merely, but to obtain substantial justice on the trial of the cause." Such an omission renders the application fatally defective. State v. Howell, 117 Mo. 307; State v. Alred, 115 Mo. 471; State v. Heinze, 45 Mo. App. 403. (2) One of the errors complained of in the motion for a new trial is the failure of the court to give an instruction on the question of alibi. Although the defendant did not ask an instruction on this subject, he did except at the time to the action of the court in not instructing the jury on all the law of the case. But, there was no evidence before the jury tending to establish this defense. 1 Bish. New Cr. Proc., sec. 1061. (3) Where the instructions fully cover the case, it is not error to refuse defendant's instructions. State v. Frank, 159 Mo. 535; State v. Nelson, 166 Mo. 191; State v. Bradford, 156 Mo. 91. (4) The information charges the offense in the language of the statute and is sufficient. It is true that in charging the assault the word "feloniously" is not used in the information, but under section 1847, Revised Statutes 1899, upon which this prosecution is based, it is not necessary to charge an assault, where the criminal act charged is the shooting at or stabbing another with intent to kill. State v. Phelan, 65 Mo. 547; State v. Doyle, 107 Mo. 40; Bish. New Cr. Proc., sec. 654. (5) The court did not err in refusing defendant's instruction in the nature of a demurrer to the evidence. State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496.

BURGESS, P. J.—On the 31st day of August, 1903, there was filed in the office of the clerk of the circuit court of Ozark county, by the prosecuting attorney of said county, an information in which it was

charged that Thomas Bond and Riley Bond, on or about the 15th day of October, 1901, at said county, did of their malice aforethought shoot and wound, with intent to kill, one D. B. May. Thereafter, at the February term, 1904, of said court, on motion of defendants, a severance was granted them. On the 24th day of November, 1904, the defendant, Thomas Bond, was put upon his trial before the court and jury, found guilty as charged in the information, and his punishment fixed at two years' imprisonment in the penitentiary. After the usual motions for a new trial and in arrest were filed and overruled, defendant appealed.

At the time of the shooting, D. B. May and Riley Bond, father of the defendant, lived about two and a half miles apart. The defendant and his wife were then living with defendant's father, but defendant himself for a short time prior to the difficulty had been away from home. Bad feeling had existed between the defendant and May for some time. About two months before the day of the alleged offense the defendant and May had a difficulty in which the defendant stabbed May in the back with a knife. Upon the 15th day of October, 1901, May had sufficiently recovered from the wound inflicted by the defendant to be out. He had gone on horseback across the White river on business on the morning of that day, and while recrossing the river upon his return, when about twenty steps from the bank in the direction he was going, his horse stumbled and at the same time he was shot in the back from the rear, the ball passing entirely through his body. About noon of the same day a witness by the name of Hayes, who did not then know the defendant, rode up to Riley Bond's house, fed his horse and got dinner. As he was riding up and when within twenty yards of the house he saw a young man come to the door with a rifle. The man immediately disappeared and Hayes did not see him again that day. While at dinner Hayes saw two rifles, a Winchester and a muzzle loading rifle,

lying on the bed.  The defendant had purchased a new Winchester rifle a short time before that day.  Riley Bond informed Hayes that day of the shooting of May that morning.  Hayes afterwards picked out the defendant from a number of men in the court house in said county as the man he saw with the rifle at Riley Bond's, and and at the trial he testified that he looked like the man he saw there at that time.  The defendant was seen in the neighborhood shortly before the time of the shooting.  On the evening of the 16th day of October, the day after May was shot, the defendant went to the house of his brother-in-law, Frank McMillin.  He told McMillin of the shooting of May the morning of the day before, and stated that if May's horse had not stumbled when the trigger was pulled he would never have got out of the creek.

Defendant was a witness in his own behalf and denied the shooting and also denied making the statement about May's horse stumbling, as testified to by witness McMillin.

There was evidence tending to show that witnesses May and Hayes had made statements out of court in conflict with their testimony at the trial.  Evidence was also introduced tending to prove that the defendant had left his father's place and the neighborhood in which the crime was  committed and that he was seen near West Plains the day after the commission of the offense charged.  The defendant himself did not testify upon that subject.   The  defense was  a  plea of not guilty.

At the close of the evidence for the State and again at the close of all the evidence the defendant requested the court to give an instruction in the nature of a demurrer to the evidence, which instruction the court refused to give.

The court instructed the jury as follows:

"1.  The court instructs the jury that if you believe from the evidence that the  defendant, at the

county of Ozark and State of Missouri, at any time within three years next before the filing of the information in this case, did, on purpose and of his malice aforethought, shoot D. B. May with the intent to kill said D. B. May, or do him some bodily harm, you will find the defendant guilty as charged and assess his punishment at imprisonment in the penitentiary not less than two years nor more than ten years.

"2. The term 'malice' does not mean mere hatred or ill-will, as the term is commonly understood, but it means the intentional doing of a wrongful act, and signifies that state of the mind or disposition that would prompt one man to take the life of another, or do him some great bodily harm, without just cause or excuse. The term 'aforethought' means thought of beforehand for any length of time, however short.

"3. The law presumes the defendant innocent until the State has proven his guilt beyond a reasonable doubt; unless the State has so proven his guilt, you should acquit him, but such a doubt to authorize an acquittal on that ground alone should be a substantial doubt of guilt and not a mere possibility of his innocence.

"4. Before you will be justified in convicting the defendant upon circumstantial evidence alone, the circumstances relied on must point to the guilt of the defendant so strongly as to exclude every reasonable hypothesis except that of the guilt of the defendant.

"5. If you believe that since the alleged commission of the offense charged in this case the defendant has made any statement in relation thereto, you will consider all that he said together; what he said, if anything, against himself, the law presumes to be true, because said against himself; what he said, if anything, in his own favor, you are not bound to believe, because said in a conversation proven by the State; but you may believe or disbelieve such statements, if any, made in his own favor, according as you may believe from all

the facts and circumstances in evidence or what part of any statement defendant may have made, if any, is true or false.

"6. You are the sole judges of the weight of the evidence and the credibility of the witnesses. In passing upon what weight you will give to the testimony of any witness you may take into consideration the manner and conduct of the witness while on the stand, his feelings for or against the defendant, if any, his relationship, if any, to the defendant, his bias or prejudice, if any be shown, his interest in the case, if any, the reasonableness of his statements or unreasonableness of his statements, together with any other fact or circumstances in evidence that in your judgment may add to or detract from the weight of the testimony of any witness, and if you believe that any witness has wilfully testified falsely to any material matter in this case, you should disregard the whole or any part of the testimony of such witness.

"7. The defendant is a competent witness in his own behalf, and his testimony is to be received by you and weighed by the same rules as the testimony of any other witness. In determining what weight you will give to his testimony, you may take into consideration the fact that he is the defendant on trial and his interest in the result of the trial."

The defendant asked the court to declare the whole law governing the case, but the court refused to give any further instructions, to which action of the court the defendant then and there duly excepted. Defendant then asked the court to instruct the jury as follows:

"1. The court instructs the jury that there is no evidence in this case to warrant you in convicting the defendant, and you should acquit him.

"2. The court instructs the jury that a reasonable doubt, as used in these instructions, exists when the evidence does not satisfy the jury of the truth of the

191 Sup—36

charge with such a certainty that a prudent man would feel safe in acting upon it in his own most important affairs and dearest personal interests.

"3. The court instructs the jury that the guilt of the defendant cannot be presumed, but must be proven by direct or circumstantial evidence, and the court instructs you that there is no direct evidence of the guilt of the defendant in this case.

"Before you can convict the defendant on circumstantial evidence alone, the facts and circumstances must form a complete chain, and all point to his guilt, and must be irreconcilable with any reasonable theory of his innocence, but before the jury can convict the defendant on circumstantial evidence alone, the circumstances must not only be consistent with his guilt and point directly thereto, but must be absolutely inconsistent with any reasonable theory of his innocence.

"4. The court instructs the jury that if they find from the evidence that the State has shown no motive on the part of the defendant to commit the crime charged in the information, then the absence of such motive is a circumstance which the jury ought to consider in arriving at their verdict.

"5. The court instructs the jury that circumstantial evidence should always be cautiously considered, and to warrant a conviction it must be such as to produce in the minds of the jury that certainty of guilt that a discreet man would be willing to act upon in his own grave and important affairs. Such evidence is not sufficient for conviction unless it excludes every reasonable theory consistent with the defendant's innocence, and if the jury are not satisfied of the guilt of the defendant beyond a reasonable doubt, the defendant ought to be acquitted, although the unfavorable circumstances, if any, have not been disproven or satisfactorily explained."

Which instructions the court refused, to which action of the court in refusing to give said instructions,

the defendant then and there duly excepted.

The defendant contends that the court erred in failing to instruct the jury on the question of alibi, which, under the evidence in this case, he insists it should have done; that, while the defendant did not in so many words say he was not present at the time and place of the alleged commission of the offense, yet his defense was an alibi, and the court should have instructed upon that phase of the case.

The formal plea of defendant was that of not guilty. If, after the court had instructed the jury, the defendant had desired it to instruct upon the question of an alibi, he should, in all fairness, have called the court's attention to its failure to so instruct and asked it to instruct upon that feature of the case; and, if it refused to do so, save an exception; but this was not done. The mere fact that defendant may have asked the court in a general way to declare the whole law governing the case was not sufficient to indicate that the court had or might fail to do so in regard to any particular phase of the case. Mr. Bishop, in his work entitled "Bishop's New Criminal Procedure," vol. 1, sec. 1061, says: "An alibi is, in criminal evidence, the defendant's showing, under his plea of not guilty and without special averment, that when the criminal thing was done he was at some place where he could not be the doer." While the evidence adduced by defendant tended to prove he was not at the home of his father, three miles from the scene of the shooting, on the day May was shot, and that defendant was seen near West Plains the day after, there is no evidence disclosed by the record tending to prove that he could not have committed the crime charged and have been where he was seen near West Plains the next day. The evidence upon the part of the State tended to show that defendant did the shooting, and, in order to have entitled him to an instruction upon the theory that he was not present at the place of the shooting at the time it was done,

there must have been a reasonable doubt as to his being there, or some evidence tending that way, and as there was no room for such doubt and no evidence to that effect, there was nothing upon which to base such an instruction. In fact, although defendant testified in his own behalf at the trial, he did not state where he was or that he was elsewhere than at the place of the shooting, at the time it occurred.

It is next claimed that the court erred in refusing the instruction asked by defendant in the nature of a demurrer to the evidence, because, as claimed, the evidence with respect to defendant's guilt was insufficient to take the case to the jury. It must be conceded that this is not a strong case, but it cannot be said there was no substantial evidence of defendant's guilt. The court who heard the evidence, and had the opportunity of observing the demeanor of the witnesses while testifying, approved the verdict, and under such circumstances this court has always declined to interfere.

Complaint is made of the action of the court in refusing the second instruction asked by defendant defining reasonable doubt; but such instruction would be superfluous, for the third instruction given by the court fully covered ''reasonable doubt,'' and is in almost the exact language of a similar instruction given in the case of State v. Nueslein, 25 Mo. 111, which is to be commended because it is short, clear and comprehensive. Every man who has sufficient intelligence to sit upon a jury in the trial of a felony case knows the meaning of ''reasonable doubt,'' and definitions of it tend to confuse rather than enlighten.

A point is made upon the refusal of the third instruction asked by defendant, but the substance of this instruction is covered by the fourth instruction given by the court; so that defendant has no ground for complaint on that score.

There is no merit in the contention that the court erred in refusing the fourth and fifth instructions

asked by defendant.

The application for continuance presented by defendant was based upon the ground of absent witnesses and was properly overruled, because it does not allege that defendant is "unable to prove such facts by other witnesses whose testimony can be as readily procured," or that "the application is not made for vexation or delay merely but to obtain substantial justice in the trial of the cause." Because of these omissions the affidavit was fatally defective. [State v. Howell, 117 Mo. 307; State v. Alred, 115 Mo. 471; State v. Heinze, 45 Mo. App. 403.]

A final contention is that the information is fatally defective in that it does not charge the assault to have been feloniously committed. The charging part of the information is as follows: "In and upon one D. B. May, on purpose and of their malice aforethought, did make an assault and did then and there on purpose and of their malice aforethought feloniously shoot and wound one D. B. May with a certain firearm loaded with powder and leaden ball which they, the said Thomas Bond and Riley Bond, had in their hands with intent then and there, him, the said D. B. May, on purpose and of their malice aforethought, feloniously to kill and murder."

It is perfectly clear that the assault is not charged in the information to have been committed "feloniously," but it is contended by the State that, under section 1847, Revised Statutes 1899, under which the information is drawn, as the criminal act charged is shooting with intent to kill, it was not necessary to charge an assault at all; that it was only necessary to charge the shooting in the language of the statute, and that part of the information which attempts to charge an assault should be regarded as surplusage, when there will remain, under said statute, a good and sufficient charge of the offense of a felonious shooting on purpose and of malice aforethought. State v. Phel-

an, 65 Mo. 547, was an indictment under this same stat-
ute. It charged that defendant, on, etc., at, etc., "wil-
fully, feloniously, on purpose, and of his malice afore-
thought, unlawfully did shoot at one Peter White, with
a pistol, which said pistol was then and there a deadly
weapon, and loaded and charged with gunpowder and
leaden bullets, with intent then and there the said Pe-
ter White wilfully, feloniously, on purpose and of his
malice aforethought to kill and murder," etc. The ob-
jection which was urged against the indictment was
that it did not allege an assault. It was held that the
indictment need not allege an assault, and, being in the
language of the statute, was good. In State v. Estis,
70 Mo. 427, which was a proceeding by indictment un-
der the same statute, SHERWOOD, C. J., speaking for
the court, said: "Under this section we have held that
the indictment having charged the defendant with wil-
fully, feloniously, etc., shooting, etc., was sufficient;
and the allegation of an assault was unnecessary," cit-
ing State v. Phelan, supra.

The case of State v. Clayton, 100 Mo. 516, was also
an indictment under this same statute. The indictment
charged: "That Wm. C. Clayton, late of the county
aforesaid, on, or about, the seventeenth day of June,
1886, at the county of Hickory, State aforesaid, did,
upon the body of one Thos. G. Allen, then and there
being, feloniously, on purpose and wilfully, with a
deadly weapon, to-wit, a revolving pistol, loaded with
gunpowder and leaden balls, which he, the said Wm.
C. Clayton, then and there, had and held, did, then and
there, make an assault with intent him, the said Thos.
G. Allen, then and there, to kill, against the peace and
dignity of the State." The court, speaking through
Judge SHERWOOD, said: "The indictment herein at-
tempts to charge a felony, that is, a crime which is lia-
ble to be punished by imprisonment in the peniten-
tiary, not one which *must* be thus punished. [R. S.
1879, sec. 1676.] This has been the law in this State

over fifty years. [Stat. 1835, sec. 36, p. 216; R. S. 1845, sec. 36, p. 414; R. S. 1855, sec. 38, p. 645; Gen. Stat. 1865, sec. 33, p. 828; Johnston v. State, 7 Mo. 183; Ingram v. State, 7 Mo. 293; State v. Murdock, 9 Mo. 739; State v. Green, 66 Mo. 632.] Being thus a felony, it was indispensable that the indictment should charge that the act, to-wit, the assault, was done with a felonious intent, because without a felonious intent there can be no felony. [Curtis v. People, Breese, 256; State v. Swann, 65 N. C. 330; 1 Arch. Cr. Plead. 885, 929; 3 Chit. Crim. Law, 788, 828; 2 Bishop Crim. Proc., secs. 79, 651, 653; State v. Thompson, 30 Mo. 470; Beasley v. State, 18 Ala. 535.] The making of an assault like the one under discussion is not a new offense created by statute; it was an offense at common law, but was only a misdemeanor. [1 East. P. C. 411.] The grade of the offense, however, having been raised to a felony, the common law rule as to charging felonies must apply, and the act charged like any other felony originating at common law. On this ground it must be held that the indictment is insufficient and that the objections to its sufficiency were well taken.''

The case of State v. Doyle, 107 Mo. 36, was another indictment for shooting, with malice, with intent to kill. The indictment charged that defendant, "with force and arms in and upon one Thos. R. Shockley, in the peace of the State, then and there being, unlawfully, wilfully, feloniously, on purpose and of his malice aforethought, with a deadly weapon, to-wit, a double-barrel shotgun, loaded with gunpowder and leaden balls, which he, the said Doyle, then and there had and held, did make an assault upon the person of the said Thos. R. Shockley, and did shoot the leaden balls from said shotgun, loaded as aforesaid, at, against and into the body of the said Thos R. Shockley, with the intent, him, the said Thos. R. Shockley, then and there unlawfully, wilfully, feloniously, on purpose and of his malice aforethought to kill and to murder.''

The indictment was challenged upon the ground that it did not charge that the shooting was done feloniously. MACFARLANE, J., in speaking for the court, said: "It is unquestionably true that proper criminal pleading requires that every felonious act must be charged to have been feloniously done. We think this indictment sufficiently does so. The assault, with a gun, is the criminal act of which defendant is accused, and which is clearly charged to have been made feloniously, on purpose and of malice aforethought. If the indictment had merely charged that defendant 'shot at' Shockley, than no assault need have been charged, but there should have been an allegation that the shooting was felonious. To 'shoot at or stab' is made an offense under this section, and to assault with a deadly weapon, another. This indictment follows the statute and sufficiently charges the latter. [State v. Webster, 77 Mo. 566; State v. Phelan, 65 Mo. 548; State v. Painter, 67 Mo. 85; State v. Havens, 95 Mo. 168.]"

Later on, in the course of the opinion, it is said: "Under section 1262, supra (sec. 1847, R. S. 1899), to 'shoot or stab' another is made a felony, and that offense may be properly charged without alleging an assault. [State v. Phelan, supra; State v. Estis, supra.]"

These adjudications clearly hold that an indictment, under section 1847, Revised Statutes 1899, for "shooting and stabbing" another, need not allege an assault, but must allege the shooting or stabbing, as it may be, to have been done, as in the case at bar, feloniously. This being the case, so much of the information as attempts to charge an assault may be rejected as surplusage and, with that part disregarded, we think the information good.

Our conclusion is that the judgment should be affirmed. It is so ordered.

All concur.