THE STATE v. BILLY BARNETT and JIM BAKER, Appellants.

Division Two, May 14, 1907.

1. INFORMATION: First Degree Murder. Information charging first degree murder, set out in the statement, *held* sufficient.

2. NOTES OF TESTIMONY: Taken by Defendant on Habeas Corpus: Compelling Delivery. It was error for the court to compel defendant's counsel to deliver to the prosecuting attorney for his inspection stenographer's notes of the testimony taken by defendant in a habeas corpus proceeding before the probate judge for the purpose of securing bail for defendant.

State v. Barnett and Baker.

3. **DEPOSITION: Regular: Improper Examination of Defendant's Counsel.** Where the deposition of a witness for defendant is regularly taken, is read without objection, and no motion is filed to suppress it for any irregularity, the prosecuting attorney should not be permitted to conduct an examination of defendant's counsel for the purpose of showing that the witness's testimony was of little value because the State was not represented at the taking of the deposition.

4. **DEFENDANT AS WITNESS: Character: Impeachment.** When a defendant offers himself as a witness, he is subject to impeachment in the same manner as any other witness, and for that purpose the State may attack his general reputation for morality.

5. **INSTRUCTIONS: Defendants Jointly Indicted and Tried: General Objection.** Where defendants are jointly indicted and tried, an objection to the instructions given as not being all the law of the case is not sufficient to convict the court of error in failing to instruct that the jury might find one or both of the defendants guilty, or acquit one or both. Defendants should have requested such an instruction, or called the court's attention to its failure to instruct upon this particular feature of the case.

6. **MURDER: Motive: No Instruction Necessary.** Where, in a prosecution for murder, the defense is justifiable homicide, an instruction as to motive is properly refused.

7. **MANSLAUGHTER: Erroneous Instruction.** An instruction is erroneous which tells the jury that if defendant killed deceased while in a violent passion suddenly aroused by a reasonable apprehension that deceased was about to kill him or inflict upon him some personal injury, he is guilty of manslaughter in the fourth degree. Apprehension of danger is applicable only to the theory of self-defense.

8. **INSTRUCTION: On Manslaughter: Conviction of Murder.** A defendant convicted of murder in the second degree has the right to complain of an erroneous instruction on manslaughter.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*C. G. Shepard* and *Faris & Oliver* for appellants.

(1) The order of the court compelling defendants to furnish testimony against themselves was error.

203 Sup—41

Boyd v. United States, 116 U. S. 616; Cons. of Mo., sec. 23, art. 2; Cons. of U. S., amendment 5; 1 Greenleaf on Evidence, sec. 451; Cooper v. State, 4 L. R. A. 766; Rice v. Rice, 9 L. R. A. 591; 1 Wharton on Evidence, secs. 533, 536, 751; Counselman v. Hitchcock, 142 U. S. 547; Wagram on Discovery, 61; Cooley, Cons. Limitations, 370; State v. Davis, 108 Mo. 666; State ex rel. v. Hardware Co., 109 Mo. 128; State v. Young, 119 Mo. 495. (2) It was error for the court to allow the State to put C. G. Shepard, Esq., of counsel for the defendants, upon the stand and question said Shepard as to the manner of taking the deposition of E. Parks. This deposition had been offered by the defendants, without objection by the State absolutely, and no motion to suppress the same was at any time filed. The State could not upon the trial discredit the same by evidence offered in the case in rebuttal. Parks being a valuable witness for the defendants, this action of the court was damaging to the defense, and was error. Delventhal v. Jones, 53 Mo. 460; State ex rel. v. Dunn, 60 Mo. 64; Holman v. Bachus, 73 Mo. 49; Bell v. Jamison, 102 Mo. 71; Deane Pump Co. v. Green, 31 Mo. App. 269. (3) It was error to permit the State to offer testimony as to the character of the defendants prior to and without their having put their character in issue. State v. Beckner, 194 Mo. 281; 1 Wigmore on Evidence, secs. 57, 58, 59; State v. Pollard, 174 Mo. 607; State v. Nelson, 101 Mo. 464; State v. Smith, 125 Mo. 7. (4) The court erred in failing to instruct on all of the law in the case, in this respect, among others, that though defendants were jointly indicted, and though there was no sufficient testimony to go to the jury as to the guilt of Baker, yet the court did not instruct the jury that they might find one or both of the defendants guilty or acquit one or both of them as they might find the facts to be as to guilt or innocence. Under the instructions as given by the court the jury evi-

dently believed that they should find both or neither guilty. State v. Vaughan, 200 Mo. 1; State v. Kaiser, 124 Mo. 651; sec. 2627, R. S. 1899. (5) Considering the theory of the State and the instructions given by the State, defendants were entitled to have presented to the jury an instruction as to motive. This instruction the defendants offered, but the court refused. Under all the facts this was error. State v. Foley, 144 Mo. 600. (6) The information is repugnant and contradictory in its terms and it attempts to charge an impossible thing. 1 Wharton's Precedents (3 Ed), 114; State v. Bradford, 156 Mo. 91; Kelley's Crim. Law, 474.

*Herbert S. Hadley,* Attorney-General, and *John Kennish* and *N. T. Gentry,* Assistant Attorneys-General, for the State.

(1) The information, which was accompanied by the affidavit of the prosecuting attorney, is sufficient in form and substance. State v. Gleason, 172 Mo. 263. (2) Prejudicial error was not committed by the court in making the order that defendants' counsel produce for the inspection of the prosecuting attorney a copy of the testimony of a witness given upon a public trial before the probate judge of said county upon a habeas corpus proceeding brought by the defendants. State v. Lentz, 184 Mo. 223; State v. Black, 12 Mo. App. 531; State v. Reppetto, 66 Mo. App. 251. (3) Prejudicial error was not committed by the court in permitting the examination of C. G. Shepard, Esq., of counsel for defendants, as to the manner of taking the deposition of witness E. Parks. The only question asked the witness, Shepard, to which an objection was made and overruled and an answer given thereto, was the question as to whether or not the circuit court of that county was in session when the deposition of witness Parks was taken. All other objections were sustained by the

court. As it was a matter of no materiality or importance whether or not the circuit court was in session when the deposition was taken, defendants could not have been prejudiced by the testimony of this witness. No citation of authorities is necessary on the proposition that this court will not reverse and remand a cause for the commission of non-prejudicial error. (4) The court did not err in permitting the State to prove the reputation of the defendants for morality. Each of the defendants testified in the cause. A defendant who testifies in his own behalf may be impeached in the same manner as any other witness, and it is settled law that the reputation of a witness for morality may be proven for the purpose of impeachment. This question has been fully considered by this court in the recent case of State v. Beckner, 194 Mo. 281, and decided against the contention of appellants. (5) It is assigned as error that the court failed to instruct the jury on all questions of law arising in the case, in this: That, though the defendants were jointly indicted and tried, the court did not instruct the jury that they might find one or both of the defendants guilty, or acquit one or both, as they might find the facts to be as to guilt or innocence. It is conceded that such an instruction was not given in this case, neither was such an instruction requested by the defendants. The case of State v. Vaughan, 200 Mo. 1, in which this question was fully considered by this court, is cited and relied upon by the defendants as authority that error was committed by the trial court. It will be observed that in the Vaughan case an instruction upon this question of law was asked by the defendants and refused by the court, and it was the action of the court in refusing to give such instruction that was held to have been error by this court. The defendants did not ask an instruction upon this question of law, and having failed to do so, they cannot now, for that reason, convict the trial court of error.

State v. Weatherman, 202 Mo. 6; State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. 717; State v. West, 202 Mo. 128. (6) The court did not err in refusing instruction C, asked by defendants. State v. Lynn, 169 Mo. 664.

FOX, P. J.—This cause has reached this court by appeal on the part of the defendants from a judgment of the circuit court of Pemiscot county convicting them of murder in the second degree. Since reaching this court the death of the defendant Baker has been suggested; therefore, we will confine our attention to the complaints of the defendant Barnett.

On the 16th day of January, 1905, an information was filed, duly verified, by L. L. Collins, prosecuting attorney of Pemiscot county, charging the defendant with murder in the first degree. As the sufficiency of this information is challenged it is well to here reproduce it. Omitting formal parts, it is as follows:

"L. L. Collins, prosecuting attorney within and for the county of Pemiscot and State of Missouri, upon his official oath and upon his hereto appended oath informs the court that Billy Barnett and Jim Baker, late of the county of Pemiscot and State of Missouri, on the 13th day of January, 1905, at the county of Pemiscot and State of Missouri, did then and there in and upon the body of one Joe Morgan, then and there being, feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, did make an assault, and that the said Billy Barnett and Jim Baker with a certain pistol, then and there charged and loaded with gunpowder and leaden balls, which said pistol they, the said Billy Barnett and Jim Baker, in their hands then and there had and held, then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, did discharge and shoot off, to, against and upon the said Joe Morgan.

And that the said Billy Barnett and Jim Baker, with the leaden balls aforesaid, out of the pistol aforesaid, then and there by force of the gunpowder aforesaid by the said Billy Barnett and Jim Baker discharged and shot off as aforesaid, then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, did strike, penetrate and wound him the said Joe Morgan, then and thereby feloniously, willfully, deliberately, premeditatedly, on purpose and of their malice aforethought, giving to him the said Joe Morgan in and upon the right side of the body of him, the said Joe Morgan, one mortal wound of the depth of ten inches and of the breadth of one-half of an inch, of which mortal wound he, the said Joe Morgan, then and there instantly died. And so L. L. Collins, prosecuting attorney as aforesaid, upon his official oath as aforesaid, doth say that the said Billy Barnett and Jim Baker, him, the said Joe Morgan, in the manner and by the means aforesaid, at the county and State aforesaid, feloniously, willfully, premeditatedly, deliberately, on purpose and of their malice aforethought, did kill and murder, against the peace and dignity of the State.''

The prosecuting attorney, after the return of this indictment, elected to prosecute the defendants for murder in the second degree. The testimony introduced upon the trial is conflicting and it will be sufficient to indicate the facts that the testimony offered by the opposing sides tended to prove.

The testimony on the part of the State tended to establish that the difficulty which resulted in the death of the deceased, Joe Morgan, occurred at Cottonwood Point, a small town in Pemiscot county, situated on the Mississippi river several miles below Caruthersville, and that at the time of the killing of the deceased he was marshal of the town of Cottonwood Point as well as constable of that township. The defendant Barnett

was the proprietor of a saloon which was located out-
side of the town limits of Cottonwood Point. The de-
fendant Baker resided a few miles in the country but
was in the habit of doing most of his trading at Cotton-
wood Point. At about half past seven o'clock on Jan-
uary 13, 1905, the deceased was in Watson's store in
company with members of the town board. Steve S.
Pate, who was a member of the board, testified that he
heard defendant Baker making some noise out on
the street that night before the shooting. He says
first in his testimony that he was "hollering" and cut-
ting up; he afterwards said "he was just hollering, is
all I know," and the witness did not remember whether
he was swearing or not; he finally said, "He hallooed
two or three times, or something that way, tolerably
loud." He further says that Baker was intoxicated.
This witness further states that Morgan left Watson's
store and went out on the street; went out of the front
door. "There is a porch in front of that building.
After Joe Morgan got out of the house and went into
the street it wasn't but a few minutes until they began
shooting. To the best of my knowledge about ten shots
were fired. When the first shot was fired I was in Wat-
son's store at the place of the council meeting; as soon
as the first shot was fired I ran out of store into the
street." He further states that the firing was up close
to the Gay saloon in the street, which is the
same street that Morgan went into when he left
the store. "I suppose it is about 135 or 140 feet
from the Watson store building to the point where
this shooting occurred. I ran out into the street
when the first shot was fired." This witness further
says that he did not see anyone but Barnett and Baker
and that Morgan was back over on the west side of the
street, back next to the old Gay building. This witness
was some distance from the place where the shooting
occurred and the tendency of his testimony is that the

defendants and Morgan were not close together when the shooting was going on; at least, he says, "if Joe Morgan was anywhere about the defendant while the shooting was going on, I didn't see him." He says further, "I did not see him when I first ran out into the street," and that if he was in the street he did not see him, and gives it as his impression that if he had been anywhere close to the defendant he could and would have seen him. This witness further testified that he was about 100 feet or something that way from the defendants and says it was a light night, tolerably cold and the ground was frozen, probably an inch or two inches thick. He further states that, after the deceased fired three or four shots, he, the witness, walked up there a little piece towards them, and he says, "I saw Morgan kind of weaken and I rushed up to him and he said, 'They have killed me;' I caught hold of him and went to Watson's store with him. He was badly hurt and suffering a great deal. He lived ten or twelve minutes after that. I don't remember his saying anything about the defendant after that." Dr. Tipton was summoned, but did not reach Watson's store until after the death of the deceased. He testified that the bullet entered the deceased's body on the right side of the eleventh rib near the median line; that it passed through the body at an angle of about thirty degrees and lodged near the seventh rib, one inch to the left and about three inches below the nipple on the left side. He further testified that in his opinion the deceased died from the effect of said gun-shot wound.

The State's evidence further tended to show that the defendant Baker stated on the next day after the shooting that he was drinking and that they made some noise after going out of the barber shop and someone tried to arrest him and defendant Baker said, "God damn you, you can't arrest me;" that the deceased commenced shooting and that Barnett shot the deceased

over the shoulder of the defendant Baker. There was further evidence introduced by the State tending to show that the defendants concealed themselves for something like two weeks after the difficulty. After arrangements had been made or attempted to be made for their release upon bond, they, with their attorney, came to see Sheriff Franklin at his office in Caruthersville and surrendered themselves.

The testimony on the part of the defendants tended substantially to show about the following state of facts: That Barnett, one of the defendants, lived about a half mile and the other some two miles from and north of Cottonwood Point; that they came into town about sundown on the 13th day of January, 1905. Upon reaching Cottonwood Point defendants went into the store of Ed Watson and ate a lunch; after they had eaten this lunch they went to a barber shop and one of the defendants, Billy Barnett, was shaved and had his hair cut. Immediately after this work was finished the defendants started back north, leaving the town to return home. Shortly after they left the barber shop defendant Baker hallooed, and used this expression, "Give me some fire crackers." After proceeding some hundred feet, he again hallooed, using, as he said, the same expression. At this time the village board of trustees was in session, and deceased, who was town marshal and constable of the township, was present at this board meeting. That immediately after defendant Baker had hallooed, deceased left the room in which the board meeting was being held and went out on the street. Witness Parks for the defendant testifies that as the deceased went out of the door he reached back as if to draw a pistol. Shortly after the deceased went out of the Watson store building where the town board was holding a session, the testimony for the defendant tends to show there were seven or eight shots fired. The defendants both testified that they were going

along a path some four feet wide and had reached a point about two hundred and eleven feet from the barber shop when the deceased came upon the right side of the defendant Baker and placed his hand on defendant Baker's shoulder, at the same time saying, "Consider yourself under arrest." That defendant Baker said, "Is that you Joe Morgan?" and deceased replied, "Yes." Thereupon, defendant Baker said, "You can't arrest me." That thereupon deceased instantly raised his right hand, which contained a pistol, and fired across the shoulder of defendant Baker at defendant Barnett. Defendant Baker threw his right hand up, and striking the pistol of deceased, deflected this shot. Defendant Barnett then drew his pistol and as deceased fired again struck deceased's pistol and deflected his (deceased's) second shot. Defendant Barnett then fired one shot at deceased, which deceased deflected by striking Barnett's pistol, and deceased fired a third shot at defendant Barnett. Thereupon, the pistol of deceased snapped twice, failing to explode, defendant Barnett in the meantime fired three shots at deceased in rapid succession. Deceased, who during all the time of this shooting had hold of the right arm of defendant Baker, while Barnett held to Baker's left arm, then released Baker's arm and fell back or staggered back and when some six or eight feet away again fired his fourth and last shot. Upon an examination of the ground immediately after the shooting, it was found that the ground was kicked up and disturbed at a point about seven or eight feet from the corner of a building used as a residence by witness Julius Taylor. Taylor was only some seventeen or twenty feet from the scene of the difficulty, but was inside of his house so that he could not see by whom it was done. Taylor testified that all eight of the shots were fired from apparently the same point; that after the shooting he immediately investigated and found the ground

kicked up, as if by men scuffling, and that at or near this point he found the cap which deceased had on when he left the board meeting. It further appears in evidence that deceased was armed with a six-shot 41-calibre Colt's pistol, from which it was found he had fired four shots during the difficulty. Two loaded cartridges, both of which had been snapped or struck with the hammer of the pistol, but not exploded, were found in the pistol of deceased. Defendant Barnett was armed with a thirty-eight calibre pistol of the Smith & Wesson make. The testimony on the part of the defendant tended to show that the pistol of the deceased was much larger than that of defendant Barnett, and when fired made a much louder report, and that the first two shots were louder than the succeeding ones till the last two. It further appears from the testimony that Baker was not armed at all; did not even have a pocket knife. There was no testimony introduced by the State showing any prior ill-feeling on the part of the defendants against the deceased. There was other testimony introduced by the defendant showing that the deceased had made prior threats against the defendant Barnett and his brother to the effect that if the deceased ever had to arrest them he would give them no show but kill them. There was some testimony offered by the defendants tending to show that the deceased was of a rash, turbulent and violent disposition.

In rebuttal, the State offered testimony tending to prove that no threats were made by the deceased at the time testified to by defendant's witnesses. There was also testimony offered by the State showing the bad reputation of the defendants who had testified as witnesses, and that some of the witnesses for the defendants were of bad reputation for truth and veracity.

At the close of the testimony the court instructed the jury upon murder in the second degree and manslaughter in the fourth degree and upon self-defense,

reasonable doubt, and gave other instructions upon questions to which the testimony was applicable. The errors complained of respecting the instructions will be given proper attention during the course of the opinion. This is a sufficient statement of the testimony developed at the trial to enable us to determine the legal propositions arising from the disclosures of the record. The cause was submitted to the jury upon the evidence and instructions of the court, and they returned a verdict finding both of the defendants guilty of murder in the second degree and assessing their punishment at imprisonment in the penitentiary for a term of ten years. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Sentence and judgment were pronounced and entered of record in accordance with the verdict and from this judgment the defendants in due time and proper form prosecuted their appeal to this court, and the record is now before us for consideration.

## OPINION.

The record in this cause discloses the assignment of numerous errors as a basis for the reversal of this judgment.

## I.

It is insisted by learned counsel for appellant that the information in this cause is not sufficient to support the judgment and that the demurrer to the information should have been sustained. It is sufficient to say upon this insistence that we have carefully analyzed all of the allegations of the information and find that they are substantially in harmony with approved precedents by this court.

## II.

It is insisted that the court committed error in compelling defendants to deliver to the prosecuting at-

torney certain notes of testimony taken upon a proceeding before the probate judge upon a writ of habeas corpus for the purpose of securing bail.

It is disclosed by the record that there was an application for bail before the probate judge and upon that application the testimony of witnesses was taken. It also appears that counsel for the defendant, for the purpose of preparing for the trial of the case and the proper management of the case, had their stenographer present who took the testimony of these witnesses and transcribed it for counsel for the defendant. During the progress of this trial at which the defendants were convicted, upon the application of the prosecuting attorney, the court made the following order:

"The court makes an order on the defendants' counsel, Messrs. Faris & Oliver and Shepard, upon the representation to the court that defendants' counsel have in their possession testimony of witnesses taken upon application of the defendants in this case for bail before the judge of the probate court of this county and with the prosecuting attorney representing that he desires to examine this testimony, not having any himself, the court makes an order on the gentlemen to produce it for his inspection."

To the making of this order counsel for defendants objected and earnestly protested against the delivery of the notes of their testimony to the representative of the State. The court overruled their objections and compelled them to deliver their notes to the prosecuting attorney for his inspection.

We are unable to see upon what theory the action of the court in making this order can be maintained. While it is true this was a public trial, yet this testimony was taken by the stenographer simply for the use of the defendants' counsel and there was no power in the court or any other person to compel the production of the private notes of testimony taken by the private

stenographer for their own use to be used by the prose-
cuting attorney in aiding him in the management and
conduct of the prosecution of the defendants in this
cause. It would certainly not be contended that if the
defendants' counsel had taken notes of this testimony
with a lead pencil or pen and ink themselves, the court
would be authorized to compel them to furnish such
notes to the prosecuting attorney, yet there is absolute-
ly no distinction to be drawn between the taking of
notes by the counsel and having it done by a stenogra-
pher. There was no law requiring this testimony to be
taken by a stenographer and transcribed, and there-
fore it can only be treated as simply a precaution on
the part of the defendants' counsel to properly prepare
and manage their case, that they sought to preserve
the testimony of the witnesses taken upon this applica-
tion for a writ of habeas corpus, and these notes of the
testimony as taken by the stenographer were as much
their private property and absolutely under their con-
trol as notes taken of the testimony by calling wit-
nesses into their office and inquiring of them what they
knew about the case and preserving their statements
by having a stenographer take the questions and an-
swers that might be made by such witnesses in the of-
fice of counsel. That this was error, in our opinion, is
too plain for discussion, and the order of the court
should have never been made. However, we deem it
unnecessary to express an opinion as to whether such
error would constitute reversible error, and while it
may not fall directly within the inhibition of the Con-
stitution which prohibits the compelling of a defendant
to testify against himself, it is clearly very close to the
verge of violating that constitutional provision by com-
pelling the counsel for defendants to furnish their pri-
vate notes taken by their stenographer in order to aid
the prosecution in conducting the prosecution against
their clients. We are unwilling to sanction that method

of conducting prosecutions by the prosecuting officers of this State.

### III.

The record discloses that the defendants took the deposition of witness E. Parks. This deposition was read in evidence by the defendants' counsel without objection by the State and there had been no previous motion to suppress the same on account of any irregularity in the taking of the deposition. In other words, the record discloses that it was practically conceded that the deposition was taken upon due notice and filed in the circuit court of Pemiscot county and read in evidence for the defendants. It is disclosed by the record that after the reading of the deposition of E. Parks in evidence the prosecuting attorney called C. G. Shepard, one of the counsel for the defendant, and over the objections of the defendant proceeded to an examination of him in respect to the taking of the deposition. We will not burden this opinion with a reproduction of the examination of Mr. Shepard, but it is sufficient to say that we have read such examination carefully and duly considered it, and we are of the opinion that this examination was entirely unauthorized and it is apparent that the only purpose was by an illegitimate and illegal method to destroy whatever force and effect might be given by the jury to the testimony of the witness whose deposition was taken. The prosecuting attorney had due notice of the taking of this deposition and the court should not have permitted him to even indulge in an examination of counsel for defendant in respect to the taking of that deposition that had no other purpose in view except to impress the jury that the witness's testimony was of little value for the reason that the State was not represented at the taking of the deposition.

While it is the province and the duty of counsel

representing the State to avail himself of all legal meth-
ods to contradict and impeach witnesses introduced by
the defendant, yet it was clearly not his duty, the depo-
sition having been regularly taken, read without objec-
tions, and no motion having been filed to suppress for
any irregularity, to undertake to weaken and destroy
the force of the testimony of the witness whose deposi-
tion was taken, in a manner that is entirely unauthor-
ized in the legitimate and proper administration of jus-
tice.   The examination of Mr. Shepard was simply for
the purpose of showing that the circuit court of Pemis-
cot county was in session, therefore impressing the jury
that the prosecuting attorney was unable to be present
at the taking of it, finally emphasizing what the depo-
sition should have shown by asking the question as to
whether or not any one was there representing the
State; then follows the question as to whether or not
counsel for the defendant had not agreed to let him
know on what date the deposition would be taken so
that he could have some one present to represent the
State; and the deposition shows that the prosecuting
attorney had notice as to what date the deposition
would be taken.   Then follows in such examination of
Mr. Shepard questions propounded to him respecting
the   testimony   of   the   witness,   Mr.   Parks,   be-
fore the probate judge in the proceeding for habeas
corpus.   It is apparent from the record that these ques-
tions were propounded from the testimony preserved
by defendants' counsel which the court compelled them
to deliver to the prosecuting attorney, and while the
court excluded these questions, the representative of
the State insisted not only on propounding the ques-
tions, but in violation of the ruling of the court read
the questions and answers of this witness.   While the
learned and esteemed trial judge very promptly sus-
tained objections to such questions and answers, yet
the record discloses that counsel for the State did not

heed such ruling and insisted upon getting before the jury improper testimony which was taken in the proceeding for habeas corpus.

This examination cannot be too strongly condemned, and the court should have promptly stopped any examination along that line, and if counsel for the State insisted upon violating the injunction of the court, then such methods as are plainly within the power of the court should have been exercised to have compelled obedience to its rulings.

## IV.

Appellants complain of error on the part of the trial court in admitting testimony of the moral character of the defendants in the neighborhood in which they reside. The defendants had offered themselves as witnesses in this case and under the rules of law as uniformly announced by this court they were subject to impeachment in the same manner as any other witness, and for that purpose the State had the right to attack their general reputation for morality. This proposition was thoroughly reviewed and settled by this court in the recent case of State v. Beckner, 194 Mo. 281.

## V.

It is assigned as error that the court failed to instruct the jury on all questions of law arising in the case. Upon this proposition our attention is specially directed to the failure of the court to instruct the jury "that though the defendants were jointly indicted and tried the court did not instruct the jury that they might find one or both of the defendants guilty, or acquit one or both, as they might find the facts to be from the evidence."

The record upon this question discloses the following: After the instructions were read to the jury

203 Sup—42

counsel for the defendants stated to the court that ''defendants desire to except to the instructions as given by the court as not being all the law in the case.

''Court: Come now the defendants and object to the instructions as offered by the court, because they do not contain all the law in the case. Then the court requests the gentlemen to present any additional law they may desire or suggest to the court any additional law.

''Mr. Faris: We have already suggested, and desire to say on the part of defendants, that we have already suggested certain instructions which the court has refused, and except to the refusal of the instructions.''

The record fails to disclose that the defendants' counsel offered an instruction or suggested that the court instruct the jury along the lines of finding one or both of the defendants guilty or not guilty. In support of this contention our attention is directed to the recent case of State v. Vaughan, 200 Mo. 1. In that case, however, the record discloses that the defendants' counsel offered an instruction upon the subject now under consideration and the instruction was refused by the court, and it was for the refusal of that instruction that the Vaughan case was reversed and remanded. We see no reason to depart from the rule as announced in the case of State v. Weatherman, 202 Mo. 6, in which it was expressly ruled by this court that ''Keets Weatherman, one of the parties informed against as an accomplice of the defendant, testified in behalf of the State, but the court failed to give the usual cautionary instruction as to such testimony, although the defendant asked the court at the time the instructions were read to the jury to instruct upon all the law of the case. But no intimation was given the court by this motion as to what particular points of law had been neglected or overlooked by the court in its instructions, or upon which defend-

ant desired instructions. Defendant now insists that the court should have given the usual cautionary instruction upon the testimony of the accomplice. But, in fairness to the court, the defendant, if he desired such an instruction, should have asked for it, or have called the attention of the court to its failure to instruct upon this feature of the case. [State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. 717; State v. West, 202 Mo. 128.]''

## VI.

Complaint is made by appellants' counsel of error in the giving of instructions 1 and 5. The errors complained of in these instructions relate entirely to the defendant Baker, and the death of the defendant Baker having been suggested, we deem it unecessary to discuss the errors complained of in those instructions.

## VII.

Complaint is made that the court erred in refusing instruction "C" requested by the defendants. This instruction directed the jury that if the evidence failed to show any motive on the part of the defendants to commit the crime charged, this was a circumstance to be considered by the jury in connection with the other facts and circumstances in the case in making up their verdict.

We are of the opinion that there was no error in the refusal of this instruction. The defense in this case was upon the theory that the defendants were justified in killing the deceased under the facts developed at the trial, and the testimony of the defendants fully furnishes the motive for such shooting, and the record further discloses upon the theory advanced by the defendants that the motive in shooting the deceased was to prevent him from accomplishing a design to do them some great personal injury, and what was said in the

case of State v. Lynn, 169 Mo. l. c. 673, by Burgess, J., in responding to a contention made in that case, is applicable to the disclosures of the record in the case at bar. It was there said: "The point is made that the court erred in refusing an instruction asked by the defendant, numbered one, which told the jury that in case they failed to find any motive on the part of the defendant for the commission of the crime charged against him, then this ought to be considered with the other evidence in making up their verdict. There was no error in refusing this instruction. There was nothing upon which to predicate it. Defendant admitted the killing and testified that he shot deceased in self-defense, and to save his own life. This, according to defendant's own testimony, furnished the motive for the homicide."

## VIII.

The record discloses the preservation of exceptions to the giving of all the instructions on the part of the State; therefore, we have carefully considered the instructions as given. The statement of the evidence as disclosed by the record authorized an instruction upon manslaughter in the fourth degree. This was recognized by the trial court by the giving of an instruction embracing that grade of the crime; however, in our opinion the instruction as given on manslaughter in the fourth degree was erroneous. The instruction was as follows:

"The court instructs the jury, if you believe from all the evidence that at the time the defendant Billy Barnett shot and killed the said Joe Morgan, if you believe from the evidence that defendant Barnett did kill him, by shooting him with a loaded pistol, the defendant was acting under a violent passion suddenly aroused by reason of a reasonable apprehension on the part of the defendant Barnett that Morgan was in the act of draw-

ing some weapon upon him for the purpose of killing him or inflicting upon him some personal injury, you cannot find the defendant guilty of murder, for in that case the law presumes that such shooting was done without malice but by reason of such passion; on the other hand, although you may believe that defendant Barnett shot and killed Morgan, while in a violent passion, suddenly aroused as above stated, yet if you shall further believe from all the evidence that such killing of Morgan was done by defendant Barnett and that the same was not necessary to the self-defense of said Barnett, as explained in other instructions, you will find the defendant Barnett guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for a period of two years or at imprisonment in the county jail for a period of not less than six months nor greater than one year, or by fine of not less than five hundred dollars, or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months.''

The error of that instruction consists in telling the jury that if the defendant shot and killed the deceased while under a violent passion suddenly aroused by reason of a reasonable apprehension on the part of the defendant Barnett that Morgan was in the act of drawing some weapon upon him for the purpose of killing him or inflicting upon him some personal injury, etc., then the jury would find him guilty of manslaughter in the fourth degree. The apprehension of danger could only have reference and be applicable to the theory of self-defense. The mere apprehension of danger cannot be made the basis of an instruction authorizing the lessening of the grade of the crime, and therefore it may be that the jury, if they had been properly directed that if this shooting was done under a violent passion by reason of the assault and struggle going on about

the time of the shooting, and such instruction had been predicated upon the testimony of witness Taylor who investigated the ground and said it had been kicked up as if by men scuffling, would have found that the defendant did the shooting while under a violent passion aroused by such state of facts, but were unwilling to believe that his passion was aroused by reason of the apprehension of danger. This instruction was erroneous, and we are unwilling to guess or surmise as to what the finding of the jury would have been if the instruction for manslaughter had been predicated upon the state of facts as disclosed by the record.

The law is well settled in this State that the court should properly instruct the jury upon all grades of the crime to which the testimony may be applicable, and while it may be true that if the defendant was convicted of a lower grade of the offense he would have no right to complain of an erroneous instruction upon some higher grade, for the reason that he was not convicted of that grade of the offense, yet it needs no citation of authorities to show that, if the defendant is convicted of the higher grade of crime, he has the right to complain of an instruction given by the court upon a lower grade of offense of which he may have been convicted, and might justly contend that if the law had been properly declared upon the lower grade of crime, the jury may have convicted him of that lower grade.

We have indicated our views upon the main propositions disclosed by the record, and while we will not undertake to say that there was not sufficient testimony to support the verdict of the jury, yet it is clear that the testimony in this case was conflicting, and while the defendants may have unnecessarily taken the life of a human being, yet if we are to longer regard the forms of law and respect the rule that the defendant is entitled to a fair and impartial trial, with the errors as heretofore pointed out, we are unable to conclude that the

verdict of the jury should be permitted to stand. We feel that the ends of justice would be best subserved by awarding the defendant a new trial in which the errors indicated may be avoided.

The judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

All concur.