THE STATE v. GROVER SHAFFER, Appellant.

Division Two, December 9, 1913.

1. **CHANGE OF VENUE: Prejudice of Inhabitants: Must be Against Defendant, Not Relatives.** To authorize a change of venue on account of the prejudice of the inhabitants of the county the prejudice should be shown to be against defendant himself, not simply against his relatives. A showing that twenty years before the trial, when defendant, charged with stealing hogs, was only five or six years old, a brother and cousins of defendant were implicated in and tried for a notorious murder committed in the same neighborhood in which defendant resides, and that an abiding prejudice against them had grown up, which appears to extend itself to anyone bearing defendant's name, is not sufficient to convict the trial court of an abuse of its sound discretion in refusing a change of venue, especially where the jurors were selected from another part of the county, and none of the talesmen on their *voir dire* revealed any prejudice.

2. **MOTION TO QUASH PANEL: No Exception: Not Selected as Directed by Court.** If no exception was saved to the overruling of defendant's motion to quash the panel of jurors, any error in the ruling is not for consideration on appeal; nor does such a motion prove its allegations, and if there is no showing in the record, except a bare statement in the motion, that an order was made by the court to obtain the jury from one part of the county, and he obtained it from another, such assertion cannot be accepted as one of a fact in the case.

3. **ACCOMPLICE: Corroborated by Circumstances.** An instruction telling the jury that the testimony of an accomplice in crime "when not corroborated by some person or persons not implicated in the crime or corroborated by circumstances given in evidence as to matters material to the issues," ought to be received with great care and caution by the jury, is not reversible error. The testimony of such a witness may be "corroborated by circumstances given in evidence as to matters material to the issues," as well as by the direct testimony of another witness.

4. **INSTRUCTION: Refusal: Already Given: Reasonable Doubt.** It is doubtful whether an instruction defining reasonable doubt tends to clarity or the reverse; but where the court has already given at defendant's request an instruction sufficiently defining reasonable doubt, it is not error to refuse another

telling the jury that "if the whole evidence in this case leaves their minds in such a condition that they are neither morally certain of defendant's innocence, nor morally certain of his guilt, then a reasonable doubt exists, and the jury must acquit him."

5. ————: Singling Out Fact. An instruction which singles, out an isolated fact, and comments thereon by telling the jury that unless they find it to exist beyond all reasonable doubt then it is no evidence of defendant's guilt, thereby accentuating and calling special attention to that fact, should not be given for either the State or defendant.

6. ————: Defendant and Wife as Witnesses: Interest in Result. An instruction in a criminal case telling the jury that "the defendant is a competent witness in his own behalf, and the jury should fully and fairly consider his testimony, together with all the other testimony in the case, but the jury may take into consideration the fact that the defendant is testifying in his own behalf, and the interest he has in the result of this trial, as affecting his credibility as a witness," while improper in a civil case, and unnecessary in a criminal case, is not reversible error in a criminal case, for the reason the statute (Sec. 5242, R. S. 1909), in conferring on defendant the right to testify, has limited such right by permitting a showing of the fact that the witness is the defendant and on trial, for the purpose of affecting his credibility. And for the same reason the usual instruction as to the defendant's wife's interest is not reversible error.

Appeal from Clark Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*John A. Whiteside* and *T. L. Montgomery* for appellant.

(1) The application for change of venue on account of prejudice of the inhabitants of the county should have been sustained. State v. Goddard, 146 Mo. 181; State v. Burgess, 78 Mo. 234; Randle v. State, 28 S. W. (Tex.) 953; Higgins v. Com., 94 Ky. 54; Draughan v. Com., 45 S. W. 368; Ex parte Chase, 43 Ala. 303; Birdson v. State, 47 Ala. 74; People v. You-

kum, 53 Cal. 566; State v. Billings, 77 Iowa, 417; Gallaher v. State, 40 Tex. Cr. App. 296; Saffold v. State, 76 Miss. 258; Peoples v. Suesser, 132 Cal. 631; Barnes v. State, 14 Am. Cr. Rep. 229; Owens v. State, 82 Miss. 31. (2) Defendant's motion to quash the panel of jurors should have been sustained. State v. Wright, 161 Mo. App. 597, and authorities, supra. (3) Plaintiff's instruction number two given on part of the State is not the law as declared by numerous decisions of this court, with reference to the testimony of an accomplice, in that it includes the words "or corroborated by circumstances given in evidence as to matters material to the issues." State v. Shelton, 223 Mo. 137; State v. Daly, 210 Mo. 687; State v. Tobie, 141 Mo. 561; State v. Crab, 121 Mo. 565; State v. Black, 143 Mo. 171; State v. Sprague, 149 Mo. 423. (4) The court erred in giving plaintiff's instructions numbered three and four, in which the jury were instructed to take into consideration the interest of defendant and his wife in the result of the verdict. Secs. 5242 and 5244, R. S. 1909; State v. Starr, 244 Mo. 161; State v. Kilgore, 70 Mo. 559; Hickey v. United States, 160 U. S. 408, 16 S. Cal. 327; State v. Barrington, 198 Mo. 126. (5) The court should have given defendant's refused instruction marked "E." State v. Clark, 147 Mo. 20; State v. Talmage, 107 Mo. 550; State v. Feeley, 194 Mo. 324; State v. Neissline, 25 Mo. 124; State v. Clein, 154 Mo. App. 686; State v. Crabtree, 170 Mo. 127. (6) The court should have defendant's refused instruction marked "G." State v. Anderson, 86 Mo. 309; State v. Partlow, 90 Mo. 608; McNealey v. State, 36 Pac. (Wyo.) 827; Smith v. State, 10 Wyo. 157.

*John T. Barker*, Attorney-General, and *W. M. Fitch*, Assistant Attorney-General, for the State; *S. P. Howell* of counsel.

(1) The defendant filed his application for a change of venue on account of the prejudice of the

inhabitants of the county against him. There was no showing made as to when the defendant was advised or when he obtained knowledge of such prejudice. Such showing should be made to entitle the application to a hearing at that time. State v. Blitx, 171 Mo. 530; State v. Lehman, 182 Mo. 424; State v. Callaway, 154 Mo. 91. It is also the duty of the applicant to show that he has acted promptly on learning the facts. Cases above; State v. Davis, 203 Mo. 616; State v. Clevinger, 156 Mo. 190; State v. Sharp, 233 Mo. 269. The court. properly overruled the application. It should be borne in mind that it is the right of both the people and the accused to have the trial in the county where the crime is committed; upon an application for a change of venue on the ground of prejudice of the people, the court should see that the law providing for such change has been substantially complied with before a change is granted. (2) Corroboration may be by facts and circumstances, as well as by the testimony of witnesses. It is not necessary to have the accomplice corroborated by a living witness because the facts in the case, which are substantiated by other witnesses, may be as conclusive on the point involved as would be the testimony of a living witness. (3) Instruction 3 is a time-honored and approved instruction which cautions the jury to carefully weigh the testimony of the defendant and advising them that they may take into consideration the fact that he is defendant and testifying in his own behalf, and the interest he may have in the result of the case. This instruction in substantially the same form as given here has had the approval of this court many times. State v. Fox, 148 Mo. 517; State v. Dilks, 191 Mo. 674. Likewise instruction 4 has often had the approval of this court and especially when used in connection with instruction 3. Ordinarily we find these instructions combined and both given as one. State v. McDonnell, 232 Mo. 219; State v. Napper, 141

Mo. 407; State v. Stratman, 100 Mo. 547; State v. Lingle, 128 Mo. 538.

FARIS, J.—There was filed on the 21st day of March, 1912, in the circuit court of Clark county, an amended information charging defendant and one Guerdon Best with having on the 8th day of February preceding, committed grand larceny, for that they had stolen certain hogs in said information described. Guerdon Best pleaded guilty on April 1, 1912, was duly sentenced to the penitentiary on such plea and thereafter paroled pursuant to statute. The defendant, upon his trial, was found guilty and had assessed against him as punishment imprisonment in the penitentiary for a term of two years.

The appellant (whom we shall hereafter call the defendant) filed on the first day of April, 1912, which was the date upon which the circuit court of Clark county convened in regular term, his application for a change of venue on account of the prejudice of the inhabitants of Clark county against him. Thereafter and on the same day defendant filed a second application for a change of venue on account of the alleged prejudice against him of Judge Stewart, the regular judge of the Clark County Circuit Court. The latter application, coming on to be heard first, was sustained, and thereupon Judge Stewart called in Judge Samuel Davis, judge of the 15th Judicial Circuit, to try the case, and reset the same for trial at an adjourned term to be convened on Tuesday, April 23, 1912.

The case coming on for hearing before Judge Davis on the date last above mentioned, defendant refiled his application for a change of venue. This application, omitting caption and verification by defendant and his compurgatories, all of which latter things are formal, is in the following form:

"Now comes Grover Shaffer, one of the defendants in the above entitled cause, and states that the

minds of the inhabitants of said county of Clark are so prejudiced against him that he cannot have a fair trial in the above cause in said county, wherefore he asks that the venue of said cause be changed to the circuit court of some other county in this circuit where such prejudice does not exist.''

Upon a hearing had, defendant, to support the alleged prejudice which he averred existed against him, called, including himself, some thirteen witnesses, residing for the most part in the neighborhood, or within two or three miles of the place, where the alleged offense of the defendant was committed, and of whom at least three, if not more, were related to defendant, who swore to the existence of certain prejudice against him, which prejudice largely grew out, as was vaguely hinted in the record, of a murder and a trial therefor, in which murder a brother and certain cousins of defendant, as we are told in defendant's brief, had a part. This murder seems to have occurred more than twenty years before the instant case was tried and at a time when defendant was only some four or five years of age.

There was offered to combat the case thus made, some seventeen or more witnesses for the State, coming for the most part from the central and southern part of Clark county, and coming from divers avocations and walks of life. These witnesses for the State testified practically with unanimity that they knew of no prejudice existing in their several neighborhoods against defendant and had heard no prejudice expressed against him whatever. The court thereupon overruled the application for a change of venue and defendant saved his exceptions.

After the trial a jury of twelve men was chosen and sworn to try the case, and defendant filed a motion to quash the panel for that, as was averred in his said motion, the jurors had been selected from the central part of the county, the *elisor* who acted in

this behalf having been, as was averred, directed by the court to select them from the southern part of said Clark county. This motion was overruled, but defendant took no exceptions to the action of the court in this behalf, nor does the record show that any order was made by the court that the jurors be gotten from the southern part of the county.

The testimony offered by the State tended to show that defendant, who resided in the little village of Peaksville in Sweet Home township, in said Clark county, was at and prior to the date of the alleged theft of the hogs in question, contemplating engaging in the business of a butcher, and that to this end he had rented and had had partly fitted up a shop in the village of Revere, and that he had tentatively arranged with one Painter, who was a witness for the State, to have charge of this shop for him. The testimony of Guerdon Best, the accomplice of defendant, who, after his plea of guilty, sentence to the penitentiary and parole, was offered as a witness by the State, tended to show that Best began working for the defendant on the 5th of February, and that defendant communicated to Best his intentions of setting up a butcher shop and asked Best to go with him and get some hogs; that defendant and Best started at night, at about the hour of half-past ten and went along the public road a distance of a mile and a quarter from, and in a direction northwest of, defendant's residence to the premises of one Ben Best, who was the grandfather of the said Guerdon, and who is alleged in the information to have been the owner of the hogs stolen. Defendant and his accomplice Best drove seven hogs from Ben Best's premises back along the way in which they had come and to a point about a quarter of a mile from defendant's residence, when one of the hogs becoming unruly, objecting to going further, and showing a desire to return, defendant shot and killed it with a

small 22-calibre rifle. Thereafter defendant and Best proceeded with the remaining hogs to defendant's barn, returning shortly thereafter with a sled for the one they had killed. After placing the hog which was killed in the road upon the sled, straw was thrown over the blood and burned so as to destroy the blood signs which existed there in the road upon the snow. Thereafter they killed five of the remaining hogs in defendant's barn, took them to the kitchen, skinned them, removed the offal, cut them in halves or quarters and hung them in the attic of defendant's residence upon nails driven in the rafters. On the night following, the entrails and skins of the hogs were taken by Best and the defendant to a small creek and thrown into said creek under a culvert. One of the hogs stolen, which was deemed at the time too small to kill, was subsequently on the following night, or morning, killed by Best and the defendant, and skinned and the skin and entrails were hidden by Best, at defendant's suggestion, in an ice house at a place subsequently pointed out by Best and at a place where the same were afterwards found by the sheriff and others. Another witness, one Elmer Ritchey, an ex-convict, testifying for the State, says that he saw the meat of the hogs in question hanging in the attic of the defendant. Testimony was also offered that the attic of the defendant's house was examined and while no nails were found in the rafters, the broken parts of nails, having the appearance of having been recently broken off, were found, as well as marks indicating grease and blood on the floor, under the spot from which the nails had been broken. Other testimony offered by the State tended to show the identity of the hogs and the ownership as laid in the information.

Testimony offered on the part of defendant tended to show that his near neighbors, one of whom at least was his near relative, saw nothing of the facts

of the killing of the hogs, nor heard anything thereof, or heard any noise of the shooting of the same on the premises of defendant, as detailed by his accomplice Best. It was also shown that defendant's alleged accomplice and one Quinn Ritchey were very much together, loafing about town about the time of the theft of these hogs. The relevancy of this testimony is difficult to see, because the record discloses no definite connection of Quinn Ritchey with the matter otherwise in any way. We cannot find that Quinn Ritchey was ever sworn as a witness. By large inference he is identical with Elmer Ritchey who was a witness for the State and who, it was shown by the defense, had served a term in the penitentiary of South Dakota for grand larceny. The record, without any explanation of the discrepancy which we have been able to find, does show that one "Quinn Ritchey was recalled" and admitted that he had come back and tried to get defendant to pay him money, inferentially to refrain from testifying against him.

The defendant and his wife both testified briefly in the case, denying categorically the salient facts testified to by the witness Best. Defendant's wife denied that said Best had ever worked for the defendant at the time, or about the time of the theft of the hogs, or at any time; while defendant himself, without saying so in words, in effect corroborated Best in this detail and contradicted his wife on this point.

There was some effort made by the State to show that defendant had endeavored to hire the witness Elmer Ritchey to stay out of the State and not testify in the case. There was proof (which was not denied either by or for defendant) that defendant had given him at one time the sum of five dollars and that counsel for defendant had sent him on another occasion ten dollars, and on another had written him with the suggestion in substance that the witness would better go home and stay there; that he need not trouble

himself about returning to Missouri, unless he were arrested, and that he could not be legally subpoenaed in Iowa.

Upon the trial the court gave of his own motion a cautionary instruction to the jury touching the testimony of an accomplice. This instruction is bitterly assailed by defendant on the ground that the portion of it set out in italics is an innovation producing error meet for reversal. This instruction is as follows:

"The court instructs the jury that an accomplice is one who participates with another person in the commission of a crime and that the testimony of an accomplice is admissible in evidence against or in behalf of the party on trial, but, the jury are further instructed that the testimony of an accomplice in crime when not corroborated by some person or persons not implicated in the commission of the crime *or corroborated by circumstances given in evidence* as to matters material to the issues, that is, as to matters connecting the defendant with the commission of the crime charged against him, ought to be received with great care and caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict the defendant on such testimony.

"In this connection, however, the jury are further instructed that they may convict the defendant upon the uncorroborated testimony of an accomplice, if they believe the testimony given by the accomplice, if he be an accomplice, to be true, and if the jury also believes the testimony given by the accomplice establishes the guilt of the defendant."

The court also gave of his own motion to the jury touching the testimony of defendant and his wife, instructions 3 and 4, which we set out below, to-wit:

"3. The court instructs the jury that the defendant is a competent witness to testify in his own behalf in this case, and the jury should fully and fairly consider his testimony, together with all of the other tes-

timony in the case, but the jury may take into consideration the fact that the defendant is testifying in his own behalf, and the interest he has in the result of this trial, as affecting his credibility as a witness.

"4. The court instructs the jury that the defendant's wife is a competent witness to testify in behalf of her husband, the defendant, and the jury should fully and fairly consider her testimony, together with all of the other testimony in the case, but the jury, in determining what credit and weight they should give to the testimony of the defendant's wife, may take into consideration the fact that she is the wife of the defendant, and the interest she has in the result of this trial."

The defendant offered and the court refused to give instructions E and G, which are as follows:

"E. The court instructs the jury that if the whole evidence in this case leaves their minds in such condition that they are neither morally certain of the defendant's innocence, nor morally certain of his guilt, then a reasonable doubt exists, and the jury must give the defendant the benefit of such doubt and acquit him.

"G. Even though the jury may find from the evidence that the entrails of one of the hogs alleged to have been stolen was found in an ice house in the possession of the defendant, yet unless the jury find beyond all reasonable doubt, that the said entrails were placed there with the knowledge and consent of the defendant said fact is no evidence of defendant's guilt."

Upon all of these instructions, either for the giving thereof or for the refusal to give the same, defendant hangs his most strenuous contentions for reversal, and we have set them out herein at the expense of brevity in order that the full force of his contentions may be seen.

This statement includes, we think, enough of the facts both as to the evidence adduced and the proceedings had in the trial to render clear the points discussed in the many contentions lodged with us in the case by the defendant. Such other facts, as it shall become necessary to state, if any, will be found in the subjoined opinion.

There are lodged with us by the learned counsel a number of strenuous contentions, which have been briefed and are urged with much earnestness, learning and ability. Among these, defendant urges upon us that the learned court *nisi* erred (1) in refusing to grant to defendant upon his application a change of venue on account of the bias and prejudice of the inhabitants of Clark county; (2) that defendant's motion to quash the panel of jurors after they had been selected and sworn to try him, should have been granted; (3) that instruction 2, given by the court of his own motion, as to the necessity of corroboration, of the testimony of an accomplice, was erroneous, and (4) that the court committed error in (a) refusing to give on the part of the defendant and as requested by him, instruction marked E, and (b) that the court similarly erred in refusing to give at the request of defendant instruction marked G. Both of these instructions refused by the court, as well as the instruction numbered 2 given by the court, are set out in the statement of the case for a better understanding of the points involved.

I. Returning now to the contention of defendant as urged by him with much of zeal, that the court ought, upon the proof, to have granted defendant a change of venue on the ground of the prejudice of the inhabitants of Clark county, to some other county where such prejudice did not exist, we find that so far as the evidence offered *pro* and *con* upon the hearing was concerned, defendant on his behalf, includ-

Change of
Venue:
Prejudice of
Inhabitants.

ing himself, offered thirteen witnesses who resided, for the most part in the northern part of Clark county, and for the most part also in the immediate neighborhood where the offense of defendant is said to have been committed, and some of whom, as already stated, were related to defendant. The testimony of these witnesses tended to show the existence of some prejudice against defendant in their respective and immediate neighborhoods. The grounds for this prejudice, as learned counsel for defendant sought to prove, seem to have been in a sense inherited, and to have arisen from the fact that more than twenty years before the trial and while the defendant was but a child of some five or six years, a brother of his and three cousins were charged with a notorious murder, the victim being a member of a very prominent family of Clark county. We may say in passing that the court sustained objections to testimony which the defendant sought to offer as to the fact of this murder and to the fact that his relatives were charged therewith and tried therefor, as showing a foundation for the alleged prejudice which existed against defendant. This testimony to which the court sustained objections made by the State, would, it sufficiently appears, have tended to show that there was prejudice arising from the facts stated, against anyone bearing the name of Shaffer. The action of the court in refusing to hear this testimony is urged as error. We go out of the way and wander somewhat from the point before us to say that in our view the learned trial court was correct in its refusal. The point before the court was whether there was prejudice against defendant himself; not whether there was prejudice more than twenty years of age against his relatives. We must credit the citizens of Clark county with too much intelligence to say of them that they would visit blame upon and hold prejudice against defendant, who was but a toddling child when the facts occurred upon

which the alleged prejudice was founded, for acts in which he had no part and of which he was as innocent as the unborn babe. We cannot believe that so little of fairness and so little of intelligence would be used by the citizens of that county in distinguishing between the things done almost a generation ago by defendant's relatives and the circumstances of the life and citizenship of the defendant himself.

Returning to the main question under discussion here we may state that some seventeen witnesses were offered by the State as to whether there existed such prejudice against defendant in Clark county as would prevent him from obtaining a fair and impartial trial. These witnesses came, for the most part, from the central and southern part of Clark county; from the part of that county, we may here say, from which the trial jury afterward came. Many of these witnesses, perhaps a majority of them, did not know defendant, nor had they ever heard of him, and none of them either knew of the existence of any prejudice against him, or had they heard that any such prejudice existed. Some of them, it is true, said that such prejudice might exist and they might not be advised of it. But clearly such a statement as this elicited on cross-examination proves little of pith or value.

The record further shows that comparatively little difficulty was had in the selection of a jury. Five jurors only, if we take the letter of the record for it, disqualified themselves, and each of them for the reason, not that he was prejudiced, but because he had talked with the parties or the witnesses and had formed an opinion. Some three others, whose names do not appear in the panel of twenty-four, from which the jury was ultimately selected, were examined upon their *voir dire,* but what became of these three the record does not show.

We have had this point before us on many occasions and we have uniformly held, since the adoption

of the present statute on this subject, that the matter of granting a change of venue is bottomed upon the sound discretion of the trial court, and that it is only when the trial court so far palpably violates the discretion lodged in him, as to preclude to the defendant a fair and impartial trial, that this court will interfere. [State v. Anderson, 252 Mo. 1. c. 101; State v. Barrington, 198 Mo. 23; State v. McCarver, 194 Mo. 717; State v. Rasco, 239 Mo. 535; State v. Sharp, 233 Mo. 1. c. 283.] Especially is this true, when, as in the instant case, the testimony is conflicting, with the weight of it, as the record shows it, in favor of the absence of a sufficient *quantum* of prejudice to prevent a 'fair and impartial trial. We would hold the same view if upon the record the testimony seemed to be evenly balanced, thus deferring to the view of the learned trial court who had the witnesses before him and to the discretion which the statute and the cases cited lodge in him (Sec. 5180, R. S. 1909); *a fortiori* do we so hold where the weight of the testimony seems clearly against the position of the defendant. Hence, we disallow this point.

II.    The record shows that after the trial jury of twelve had been impaneled and sworn to try the cause the defendant filed a motion to quash the panel for that, as he averred in his motion, the **Motion to Quash Panel.** *elisor*, whose appointment upon motion he had procured, had violated the order of the court in summoning the *venire* from which the trial panel was obtained, from the central part of Clark county, instead of from the southern part thereof. There is no showing whatever in the record, except from the bare statement in this motion, that any order was made by the court to the *elisor* to obtain this jury from the southern part of Clark county. A map of Clark county showing the municipal townships thereof was introduced, and from this map and the

information afforded us by the *voir dire* examination of the *venire*, we are informed that the jury came from the central and southern townships of the county, and not from the northern townships adjoining (except as to a corner) that in which the offense is alleged to have been committed, or from that township itself. No exception was saved to the ruling of the court in over-ruling the motion to quash this panel. For this reason, if for no other, the point is not properly before us for decision. We reserve our ruling as to whether it would be error sufficient for reversal, for a sheriff to violate the order of the court as to the part of the county from which a trial panel should be summoned, until this point shall be a live one in a case before us. It is not in this case for both of the reasons suggested above.

III. Defendant concedes that instruction numbered 2, which we set out in full in the statement, is in the main the usual cautionary instruction which the law warrants the giving of touching the testimony of an accomplice, and that no error can be based upon the giving of the same, except as predicated upon the words which we have italicized, that is to say that clause which permits corroboration of an accomplice's testimony to be made *"by circumstances given in evidence."* The books are full of authorities holding that the instruction as given, without the words "corroborated by circumstances given in evidence," is a good and proper one. It has been repeatedly in that form passed on and held good by this court. [State v. Crab, 121 Mo. l. c. 565; State v. Shelton, 223 Mo. l. c. 137; State v. Daly, 210 Mo. 664; State v. Tobie, 141 Mo. l. c. 561.] So much being conceded, the narrow and exact question is whether the use of the term "corroborated by circumstances given in evidence," makes this instruction bad and is so far error hurtful to the defendant as

*Accomplice: Corroboration.*

to bring about a reversal of this case. It will be borne in mind that this instruction is without any sort of doubt merely a cautionary instruction given by the court solely for the benefit of the defendant and not for the benefit of the State. For it is the law and this instruction so tells the jury, that a conviction may be had upon the uncorroborated testimony of an accomplice, if the jury find and believe such testimony to be true, and that the same establishes the guilt of the defendant. [State v. Daly, supra; State v. Shelton, supra.] If these words which we have quoted make this instruction bad such condition arises because the thought conveyed is untrue either as a matter of fact, or as a matter of law, or both. We do not think it is necessary to cite authorities upon this point. Can there be any manner of doubt in common sense that corroboration may arise as well from circumstances as from the direct testimony of a witness? It is just as true that "confirmation strong as proof of Holy Writ" may come from circumstances arising in the case and shown by the evidence as from the testimony of one or many witnesses. No greater reason exists for the refusal of such corroboration of an accomplice's testimony by circumstances than for the refusal of circumstantial evidence in the ordinary trial. No one will doubt for a moment, in truth all of us know, that convictions may be had, and have been had, and will yet be had, upon circumstantial evidence alone. Then if one may be convicted solely and wholly upon circumstantial evidence, may not the testimony of an accomplice likewise be corroborated by such evidence? We think so, and so thinking hold that in a proper case, where competent proof is offered of corroborating facts and circumstances, the court may very properly instruct, and should in the interest of justice instruct, that the necessary *quantum* of corroboration of an accomplice's testimony may be drawn from the circumstances of the case shown in evidence.

IV. Defendant upon the trial requested the court to give instruction E, which we have for information's sake set out in the statement. Upon the refusal of the court so to do the defendant saved his exceptions. This instruction as offered by defendant, was clearly an attempt to more nearly and clearly define reasonable doubt. It is doubtful, as this court has repeatedly held, whether the defining of reasonable doubt tends toward clarity or the reverse thereof. [State v. Nerzinger, 220 Mo. 1. c. 49; State v. Bond, 191 Mo. 555; State v. Leeper, 78 Mo. 470; State v. Robinson, 117 Mo. 1. c. 661; State v. Wells, 111 Mo. 1. c. 537.] It is just a little like the gilding of fine gold. In addition to all this, the court had already given at the request of defendant an instruction sufficiently defining the nature of such doubt in order to warrant an acquittal. For this reason, if for no other, this objection of defendant must be disallowed.

*Reasonable Doubt.*

The court also refused to give instruction marked "G," which we have set out in the statement. It is clear that this requested instruction was but a comment upon one phase of the testimony offered in the case. The defendant singled it out in this instruction and asked that, touching it, the jury be instructed that unless they found the single fact set out therein beyond all reasonable doubt, the same was no evidence of defendant's guilt. If the court had given it *sua sponte,* then it is very likely the defendant would be here urging that it was error, because it is a comment upon the evidence and a singling out of one isolated fact and accentuating and calling special attention to it. This is a thing forbidden by the decisions, and the learned trial court was correct in refusing this instruction. [State v. Wertz, 191 Mo. 569.]

*Comment on Isolated Fact.*

253 Mo. 22

V.   It is also contended by defendant that the court erred in giving instructions numbered 3 and 4, which we have set out in the statement, and which deal with the weight and credibility of the testimony of the defendant and that of defend-

**Defendant as Witness.**

ant's wife.  Learned counsel cite us to a very late holding in a civil case, that of Benjamin v. Railroad, 245 Mo. 598, in which suit a similar comment upon the testimony of the plaintiff was held to be error.  We have no fault to find with the holding of the court in that case.  But learned counsel overlook the fact that the statute itself in conferring upon the defendant and defendant's spouse the right to testify, has seen fit to limit such right by permitting a showing of the fact that the witness is the defendant and on trial, and the fact of marriage to the spouse offered as a witness, for the purpose of affecting the credibility of either or both of them. [Sec. 5242, R. S. 1909.]   We have no such statute touching the testimony of a plaintiff in a civil case, or of a defendant in such case; hence the difference between the two holdings.  If the statute permits the showing of the fact of interest on account of the witness being a defendant or the spouse of a defendant, why may not the jury be likewise advised of the existence of the law applicable to such status by an appropriate instruction?  We concede, however, that there is not much excuse for the giving of such instructions as these where the court instructs generally as to the credibility of witnesses and as to the fact that the interest of any witness or witnesses in the case may be considered by the jury for the purpose of affecting the credibility of such witness.  But while these instructions have been many times given, and while in the view of the writer they ought not to be given, yet when we consider the statute which we cite above, and when we have reference to the many hold-

ings of this court that the giving of instructons such
as these do not constitute reversible error, we are not
disposed to go farther than to say, as has been many
times said before by this court, that in our view the
giving of such instructions as these subserves no useful
purpose, and would as well be omitted and the labor
of preparing the same saved.   Similar instructions
have been before us in many cases.   [State v. Napper,
141 Mo. 1. c. 407; State v. Fox, 148 Mo. 517; State v.
Dilts, 191 Mo. 673; State v. McDonough, 232 Mo. 219;
State v. Lingle, 128 Mo. 528; State v. Newcomb, 220
Mo. 1. c. 66.]   And while the giving thereof has of-
ten been criticized as unnecessary, we have not been
able to find a single case reversed on account of these
instructions.

There was sufficient evidence in the case, if the
jury believed it, and they evidently did believe it, to
warrant the verdict which they rendered.   In our view
every inference to be drawn from the facts shown in
testimony, notwithstanding the attack made upon the
different witnesses for the State, and notwithstanding
the attempt to impeach them, is in favor of the theory
of the State rather than that of the defendant.   It is
impossible to reach any other conclusion than that the
verdict of the jury was correct and fully warranted
by the facts shown.   Compelling in this view is the
fact that defendant, as neither he nor anyone for him
denies, paid money to one of the witnesses for the
State, and made other strenuous efforts, to keep this
witness out of the State and thus prevent him from
appearing against defendant.   Thus viewing the facts,
and finding after a most careful investigation of the
record, no error which will justify a reversal, we think
that the judgment should be affirmed. Let this be done.
*Brown, P. J.,* and *Walker, J.,* concur.