STATE of Missouri, Respondent,

v.

Gerald H. LUMSDEN, Appellant.

No. 61478.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

Linda F. Dycus, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Appeal from judgment on conviction by a jury of robbery, first degree, transferred from the Court of Appeals, Eastern District, after opinion, to review principally whether the trial court abused its discretion in connection with defendant's voir dire examination of the venire. Affirmed.

Appellant charges the information violated Rule 24.01 in that it did not show the statutory section which proscribes the charged conduct and the section which fixes punishment.

Present Rule 24.01 on which appellant relies became effective January 1, 1977. The information in question was filed July 30, 1975 at which time former Rule 24.01 was applicable. Former Rule 24.01 did not require, as does the present rule, that the information contain statute references for offense charged and punishment, and no prejudice appears from their absence in this case. *State v. Deloch,* 554 S.W.2d 559 (Mo.App.1977).

Appellant also charges the information is deficient in that it purports to charge defendant with first degree robbery but that he was actually tried for first degree armed robbery. He argues that because the information did not mention a weapon, he was tried, convicted, and sentenced for an offense not charged.

Defendant was charged, tried, convicted, and sentenced for robbery in the first degree under § 560.120 RSMo 1969. First degree robbery thus charged is committed by putting a victim in fear. The requisite element of fear was charged in the information, and defendant used a gun as his means of creating such fear. It is not necessary that the means of creating the fear be charged in the information. *State v. Reed,* 412 S.W.2d 187 (Mo.1967). Also, by reason of the foregoing, absence of a charge that a gun was used to create fear in the victim did not provide a ground of error in admission of the gun into evidence. *State v. Crockett,* 543 S.W.2d 314 (Mo.App. 1976).

Appellant contends the evidence was insufficient to sustain a conviction. He argues that because the robber was shown to have worn a baseball hat, sunglasses, and bandages during the robbery, no positive identifications were made, and his conviction therefore rested on insufficient circumstantial evidence.

When a conviction rests on circumstantial evidence, facts and circumstances to establish guilt must be consistent with each other, consistent with guilt of the accused and inconsistent with any reasonable theory of his innocence; in such cases the evidence need not be conclusive of guilt, nor must the evidence demonstrate the impossibility of innocence. *State v. Lee,* 556 S.W.2d 25 (Mo. banc 1977).

Satisfaction of the foregoing requirement and sufficiency of evidence are demonstrated by evidence from which a jury reasonably could find that: On January 1, 1975, at 6:30 a. m., a man wearing a baseball hat, overcoat, sunglasses and bandages over part of his face, entered Sambo's Restaurant in St. Charles County. He pointed a pistol at a waitress-clerk, and ordered her to put money from the cash register into a paper bag. She did as directed, and put some $1,480 in five, ten, and twenty dollar bills into the bag. The robber took the bag and was observed by a number of witnesses to leave the restaurant, enter a white 1964 Chevrolet, drive to Interstate Highway 70, and proceed on that highway. Two restaurant employees followed the car and saw police who had been alerted to the robbery, stop it on the Missouri River bridge at St. Charles. Inside the car was a paper bag containing $1,480 in five, ten, and twenty dollar bills, the baseball hat, an automatic pistol, and white adhesive tape. The driver was wearing an overcoat of the same description as that worn by the robber at the holdup. He was not positively identified as the robber except he was said to match the robber's general appearance. Defendant's version of the circumstances, found incredible by the jury, was that he had been at Sambo's but when he saw the robbery in progress he did not enter. Instead he returned to his car, but before he reached it, a man ran past him and entered the car. The man then left defendant's car and jumped into another which had been driven nearby and that car left. Defendant then got in his car and left the area. He didn't notice the bag of money in the front portion of his car and didn't know how the gun got under his seat.

The principal question arises from appellant's charges that the court's rulings unduly restricted defendant's voir dire examination.

Such ruling occurred when counsel attempted to question the panel on the term "reasonable doubt."

MR. HAZELWOOD: Now I anticipate that His Honor will give you certain instructions at the close of the case.

Mr. Schroeder has alluded to those instructions. The Court's going to instruct you that if you believe beyond a reasonable doubt that Mr. Lumsden is guilty, that you will return a verdict of guilty; and we've all watched television and things of that nature, and I just want to go into this a little bit at this time. What does the term 'beyond a reasonable doubt' mean to you?

MR. SCHROEDER: I'm going to object, Your Honor. I don't think that—

THE COURT: Sustained.

MR. HAZELWOOD: Do you have any preconceived notion as to what that term means?

VENIREMAN JOHNSON: Yes.

MR. HAZELWOOD: What is your notion?

MR. SCHROEDER: Your Honor, I object. That's not relevant.

THE COURT: Sustained.

MR. HAZELWOOD: Do you understand that it means more than a—

MR. SCHROEDER: Your Honor, I object. I don't think he can define reasonable doubt at this time.

MR. HAZELWOOD: If I can't go into this, these jurors are never going to know what this means and Mr. Lumsden is going to be prejudiced if any of them have an erroreous view of it.

THE COURT: The objection is sustained.

MR. HAZELWOOD: Do you have a notion that it means a mere probability—

MR. SCHROEDER: The same objection, Your Honor.

THE COURT: Sustained.

MR. HAZELWOOD: Do you have any notion that it involves a certain percentage—

MR. SCHROEDER: May we approach the bench, Judge?

THE COURT: Yes, you may.

(The following discussion was held out of the presence of the jury at the bench.)

MR. SCHROEDER: I ask that the defendant's attorney be admonished not to go into this matter any further.

THE COURT: At this time you cannot go into it further. You can in closing argument but not in voir dire.

MR. HAZELWOOD: Let's try and change some laws because I think it is a terrible terrible prejudicial thing. If I wanted to ask one juror who feels it is mere probability of guilt, that is not the law.

THE COURT: At this time you are not arguing the case. Your objection is sustained.

Appellant contends the trial court erroneously prevented defense counsel from making a full and complete inquiry into the legal qualifications of the jurors.

■ The purpose of voir dire examination is to enable each party to participate in selection of a fair and impartial jury. To that end, a liberal latitude is allowed in the examination of the panel. *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977). Nevertheless, the examination of jurors as to their qualifications is conducted under the supervision of the trial court and the nature and extent of what questions counsel may ask are discretionary with the trial court and the exercise of that discretion will be disturbed on appeal only when the record shows a manifest abuse of that discretion. *State v. Mudgett*, 531 S.W.2d 275 (Mo. banc 1975) cert. denied 426 U.S. 910, 96 S.Ct. 2234, 48 L.Ed.2d 835.

In *State v. Smith*, 422 S.W.2d 50 (Mo. banc 1967), defense counsel attempted to question the members of the jury panel "as to whether any of them have any personal feelings for or against the rule * * * pertaining to reasonable doubt." The request was denied by the trial court. This court agreed and held that the trial court had not abused its discretion by denying counsel's request to inquire into the panel's feelings regarding the reasonable doubt standard.

MAI–CR 2d 2.20 tells the jury the State's burden is to prove guilt "beyond a reasonable doubt." Notes on Use provide that "No other instruction may be given elaborating further upon or attempting to define the presumption of innocence or reasonable doubt." This direction was affirmed, *State v. Lasley*, 583 S.W.2d 511, 514 (Mo. banc 1979):

> The law in Missouri is well-settled that a judge may not comment upon the phrase "reasonable doubt" and the notes on the use of MAI–Cr 2.20 forbid a trial judge from giving any other instruction that elaborates on, or attempts to define "reasonable doubt."

■ The pattern instruction, accompanying notes on use, and case law demonstrate a policy that reasonable doubt is not to be further defined by the court, let alone by a juror. The trial court's ruling on the questions in this case seeking what reasonable doubt "means" to jurors conforms with this policy. In such circumstances, it may not be said that the trial court's ruling so limiting that line of inquiry constituted a manifest abuse of discretion.

■ The second ruling charged as error on voir dire occurred when the court refused to allow defense counsel to question jury panelists on their residence and related biographical data previously provided counsel by the circuit clerk's office. Appellant argues this was necessary to "individual communication with each juror." Under the standard of *State v. Mudgett*, supra, the trial court's refusal to allow counsel to ask panelists questions, the answers to which he already knew, was not an abuse of discretion. See also *State v. Scott*, 515 S.W.2d 524 (Mo.1974).

Appellant also charges, as a subject of plain error, Rule 27.20(c), that he was denied a fair trial because he did not have effective assistance of counsel. He alleges counsel failed to advise him of his rights: (a) to challenge the psychiatric finding that defendant was competent to stand trial; (b) to put the doctor making that finding on the stand; (c) to have a sanity hearing out of the presence of the jury before trial on the charge. He also charges his counsel was remiss in failing to challenge the then existing jury selection process, since held unconstitutional in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

A contention of ineffective assistance of counsel at trial may be raised on direct appeal. *State v. Cluck*, 451 S.W.2d 103 (Mo.1970). However raised, defendant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby, *Seales v. State*, 580 S.W.2d 733 (Mo. banc 1979). The record in this case is not adequate for such determination and the matter is better left to proceedings directed to that purpose under Rule 27.26. *State v. Blackwell*, 459 S.W.2d 268 (Mo. banc 1970).

Judgment affirmed.

DONNELLY, RENDLEN and MORGAN, JJ., concur.

BARDGETT, C. J., and WELLIVER, J., dissent in separate dissenting opinions filed.

SEILER, J., dissents.

BARDGETT, Chief Judge, dissenting.

I respectfully dissent and in so doing will utilize portions of the court of appeals opinion authored by Smith, J.

In my opinion the cause should be reversed and remanded for a new trial because the trial court erred in unduly restricting defendant's voir dire examination to the prejudice of the defendant. The questioning of venireman Johnson is set forth in the principal opinion and need not be repeated here. Suffice it to say that it demonstrates that the prospective juror said that he did have a preconceived notion of what reasonable doubt means, after being informed that he would be instructed that to find the defendant guilty a juror must do so by a belief beyond a reasonable doubt. However, when the attorney for the defendant asked the prospective juror what that preconceived notion was, the court sustained the State's objection to the question and defense counsel was prohibited from finding out what this preconceived notion actually was.

In *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977), this Court held at 799:

"The constitutional right to a trial by jury would be a mockery of justice if it did not guarantee a jury with open minds, freely able to follow the law as declared by the trial court. *Faught v. St. Louis-San Francisco Ry. Co.*, 325 S.W.2d 776[1] (Mo.1959). Deeply ingrained in Missouri law lies the principle that 'a liberal latitude is allowed in the examination of jurors on their voir dire .. . . The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges.' *State v. Granberry*, 484 S.W.2d 295[4, 5] (Mo. banc 1972), citing a series of cases going back to the oft-cited case of *State v. Mann*, 83 Mo. 589 (1884). Specifically, a defendant has the right to discover whether prospective jurors have fixed opinions against applying the court-declared law of self-defense. Compare *State v. Lassieur*, 242 S.W. 900[2] (Mo.1922); *State v. Dill*, 282 S.W.2d 456[7–9] (Mo.1955)."

In *State v. Miller*, 207 S.W. 797, 798 (Mo. 1918), the following was stated:

"The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges."

For that reason a liberal latitude is allowed in the examination of jurors on voir dire. *State v. Miller, supra ; State v. Mann*, 83 Mo. 589 (1884); *State v. Granberry*, 484 S.W.2d 295 (Mo. banc 1972); *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34 (Mo.App.1967); *State v. Coleman*, 553 S.W.2d 885 (Mo.App.1977).

*Littell, supra*, quoted with approval from 31 Am.Jur. *Jury* § 139 (1958), as follows:

"Thus, reasonable latitude should be given parties in the examination of jurors to gain knowledge as to their *mental attitude toward the issues* to be tried for the purposes of aiding them in striking jur-

ors, if they are not successful in challenging them for cause." 423 S.W.2d 36–7. (Emphasis supplied.)

The State asserts that the rule announced in *State v. Smith*, 422 S.W.2d 50 (Mo. banc 1967), applies and that the court's restriction on the questioning was proper. The rule announced in *Smith* is that the individual views of the veniremen concerning the law is "immaterial unless so unyielding as to preclude them from following the law under the court's instructions." *Id.* at 68. Parenthetically, it is observed that here the parties could not know if the venireman's notion was "unyielding" or not because of the court's ruling. In any event, inherent in the rule announced in *Smith* is the supposition that the jury will be instructed on the law. MAI–CR 2d 2.20 is a mandatory burden-of-proof instruction. It contains a reference to "reasonable doubt" but does not attempt to define the term. The Notes on Use to that instruction state:

"3. *No other instruction may be given* elaborating further upon or *attempting to define* the presumption of innocence or *reasonable doubt.*" (Emphasis supplied.)

Three of the six instructions given to the jury at the close of the evidence contain reference to "reasonable doubt". The doctrine that a defendant must be found guilty "beyond a reasonable doubt" is the cornerstone and hallmark of the criminal law in this country. Since under the criminal procedure of this State no definition of this phrase is permitted, it is apparent that the jury is left to its own interpretation or definition of what is meant by "reasonable doubt". They must apply a subjective standard without guidelines from the court. Under those circumstances, the potential juror's preconceived opinions about the meaning of the legal phrase is not immaterial at all; it goes to the very heart of his qualification to serve.

At a minimum, therefore, counsel, either prosecution or defense, should be able to inquire whether the veniremen have such a preconceived opinion and if so what that opinion is. This is not to say that counsel has a right to utilize voir dire to define the phrase, to argue the meaning of the phrase, or to require each venireman to define the phrase. The court retains great discretion in determining the phrasing and the extent of the questioning that will be permitted.

Here, however, the questioning of the venire panel had elicited the information that one venireman had a preconceived notion of the meaning of the term "reasonable doubt". In my opinion, it was error not to permit counsel to find out what that preconceived notion was in order to intelligently determine the qualifications of that venireman—both for the purpose of challenging for cause and to exercise peremptory challenges.

I believe the principal opinion misses the mark when it disposes of the point in part by the observation that reasonable doubt is not to be further defined by the court in the instructions. The purpose of the voir dire was not to define "reasonable doubt" but was to find out what this particular juror had as his preconceived notion concerning that matter. It may well be that this court ought to formulate a definition of reasonable doubt instead of allowing it to be whatever the jurors seem to think it is. Regardless of that, it is simply an obvious fact that a juror's "preconceived notion" of reasonable doubt might very well be so extreme as to permit defense counsel to challenge the juror for cause, or at least to afford defense counsel the basis upon which to exercise his peremptory challenges. Whether the court instructs upon the subject or not is beside the point.

Would the juror have responded by saying that if at the conclusion of the evidence he thinks the defendant is probably guilty, then that is sufficient? Or might the juror have responded that if there was even the slightest doubt in his mind concerning guilt he would acquit? It is not fruitful to speculate on what a juror would say because voir dire examinations produce such varied and unexpected responses that speculating on the matter has little chance of becoming an accurate prediction. As it stands here, however, one of the veniremen had a preconceived notion as to what a very impor-

tant aspect in the trial of a criminal case meant, and defense counsel was prevented from having that information available to him in connection with either the challenge for cause or the peremptory challenge.

The reasoning of *State v. Brown, supra,* applies to this case as do the other cases that have been cited supra and in my opinion requires that the judgment be reversed and the cause remanded for a new trial.

WELLIVER, Judge, dissenting.

I respectfully dissent from the result and holding of the principal opinion that a defendant may not question a juror on voir dire concerning the juror's definition of "reasonable doubt" for any purpose. Also, I respectfully disagree with the views of Bardgett, C. J., expressed in his dissenting opinion filed herein that a defendant may question a juror on voir dire concerning the juror's definition of "reasonable doubt" for the purposes of formulating both challenges for cause and peremptory challenges.

While I agree that a party cannot use a juror's preconceived definition of "reasonable doubt" as a basis for challenging a juror for cause, I believe that a defendant may question a juror concerning his definition of "reasonable doubt" for the purpose of formulating peremptory challenges. This is not a case in which the trial court refused questions that would serve neither the purpose of gathering information to support a challenge for cause nor the purpose of gathering information that might lead to a peremptory challenge. The trial court in this case refused to permit questions which would elicit information that might help the defendant identify those jurors he may desire to remove by peremptory challenge. I

consider the trial court's action in sustaining objections to these questions an abuse of discretion. I would reverse.

The precise questions to which objections were sustained in this case were: "What does the term 'beyond a reasonable doubt' mean to you?" "What is your [preconceived] notion [as to what the term 'reasonable doubt' means]?" "Do you have a notion that ['reasonable doubt'] means a mere probability—?" The issue presented is whether questions on voir dire that seek to determine a juror's definition of "reasonable doubt" could further either of the two purposes of voir dire examinations: (a) that of gathering information to support a challenge of the juror for cause, or (b) that of gathering information that might lead to a peremptory challenge of the juror. "The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges." *State v. Brown,* 547 S.W.2d 797, 799 (Mo. banc 1977); *State v. Granberry,* 484 S.W.2d 295, 299 (Mo. banc 1972) (citing cases); *State v. Mann,* 83 Mo. 589, 599 (1884).

The principal opinion speaks of the public policy of this state as it is expressed in MAI–CR 2.20 and *State v. Lasley,* 583 S.W.2d 511, 514 (Mo. banc 1979). The principal opinion states that Missouri's instructions, rules and case law express a policy "that reasonable doubt is not to be further defined by the court, let alone by a juror." [1] The policy reflected in MAI–CR 2.20 is the policy against complicating instructions unnecessarily and confusing jurors.[2] The pro-

---

1. This statement, coming at a pivotal point in the principal opinion, is somewhat opaque. If *this statement means that the policy against defining "reasonable doubt" in jury instructions also forbids a juror to come to the courtroom with a preconceived definition of "reasonable doubt," articulated or intuitive, I must disagree. It is because jurors are presumed to have an understanding of the phrase that a definitional instruction is considered unnecessary.*

2. The policy underlying the rule against submitting a definition of "reasonable doubt" in

jury instructions is evidenced in the authorities collected in Richardson, "Charge not Evidence, Presumption of Innocence; Burden of Proof; Reasonable Doubt" part III, p. 12, *The Missouri Bar Committee Comments on Missouri Approved Criminal Instructions* (1974):

[O]ur courts have on several occasions held that it is impossible satisfactorily to define "reasonable doubt" and that attempts to do so are more likely to confuse than to enlighten. "In the nature of things it must be left largely to the trier of the facts. Reasonable doubt is reasonable doubt and that is about

scription against defining "reasonable doubt" in jury instructions is based on the belief that the terms cannot be usefully defined in other terms.

The Notes on Use to MAI–CR 2.20 do not disapprove a juror's having a preconceived notion of the meaning of "reasonable doubt"—it depends on it. The proscription against defining "reasonable doubt" assumes that jurors, as speakers of the language, know the ordinary usage of the terms, and could not be aided by a court's reformulation of the standard in other terms. No formulation in more basic terms is possible. The phrase "reasonable doubt" is itself so irreducibly basic that definition in terms of something else could not en-

lighten but would only confuse.[3] Forbidding a jury instruction defining "reasonable doubt" not only avoids confusing the jury, it prevents the court from being drawn into unsolvable disputes about the prejudicial effect of deviations from a standard definition of that phrase.

The belief that "reasonable doubt" cannot be usefully defined also underlies the court's reluctance to attempt to judge the adequacy of the definition of "reasonable doubt" in contexts other than that of jury instructions. If information concerning a juror's definition of "reasonable doubt" could form the basis of a challenge for cause, this Court could not long postpone

---

all that can be said in regard to it." *State v. Talmage,* 107 Mo. 543, 17 S.W. 990 (1891). "The attempts of the courts to make the definition of 'reasonable doubt' by paraphrases more intelligible to juries are futile. We may change the form of the instruction, but we do not, and indeed cannot, remove the difficulty. As soon as a person formulates a definition in the clearest and most prespicacious language he is master of, he has at once an irresistible desire to define the definition, and the more verbose the definition is the more ambiguous it is, as a rule." *State v. Wells,* 111 Mo. 533, 20 S.W. 232 (1892). "It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer. 1 Bish.Crim.Proc., section 1094. Every attempt to explain them renders an explanation of the explanation necessary." *State v. Robinson,* 117 Mo. 649, 23 S.W. 1066 (1893). "Every man who has sufficient intelligence to sit upon a jury in a trial of a felony case knows the meaning of 'reasonable doubt', and definitions of it tend to confuse rather than enlighten." *State v. Bond,* 191 Mo. 555, 90 S.W. 830 (1905). "It is doubtful, as this court has repeatedly held, whether the defining of reasonable doubt tends toward clarity or the reverse thereof, it is just a little like the gilding of fine gold." *State v. Shaffer,* 253 Mo. 320, 161 S.W. 805 (1913). See also *State v. Wells,* Mo., 305 S.W.2d 457 (1957); *State v. Lafferty,* Mo., 416 S.W.2d 157 (1967); *State v. Davis,* 482 S.W.2d 486 (Mo.1973), concurring opinion of Judge Seiler.

None of these cases hold that a *juror* may not define reasonable doubt. On the contrary, the "fine gold" which a definition of reasonable doubt would seek to "gild" is the juror's understanding of the use of the phrase in ordinary language.

**3.** *State v. Bond,* 191 Mo. 555, 564, 90 S.W. 830, 833 (1905). "Attempts to explain the term

'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954); *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880). A definition of "reasonable doubt" customarily offered in federal courts reads in part:

> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.

1 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 11.14 (3rd Ed. 1977). The definition that was approved for over a hundred years in Missouri may be found in *State v. Nueslein,* 25 Mo. 111, 124 (1857):

> If you have a reasonable doubt of defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground, ought to be a substantial doubt touching defendant's guilt, and not a mere possibility of his innocence.

This definition has been criticized on at least four grounds: that it appears to shift the burden of proof to the defendant; that it is inaccurate because "reasonable" and "substantial" are not synonymous; that it is confusing to a jury because it states what "reasonable doubt" is not; and that it is argumentative, minimizing the state's duty. Richardson, *supra* note 2, at 10–11. *See, State v. Davis,* 482 S.W.2d 486, 490 (Mo.1973) (Seiler, J., concurring).

questions concerning the adequacy of the juror's definition of "reasonable doubt". There are four possibilities to consider. To rule that it is not error to deny or that it is error to grant a challenge for cause of a juror based on the juror's preconceived definition of "reasonable doubt" is to determine that the juror's definition was adequate; to rule that it is not error to grant or that it is error to deny a challenge for cause of a juror based on the juror's definition of "reasonable doubt" would be to disapprove the juror's definition. Making each of these judgments would require the Court to establish a standard definition of "reasonable doubt" against which to compare a juror's definition to determine whether it is so extreme as to be prejudicial. Positing such a standard definition and weighing the prejudicial impact of a juror's deviation from it would draw the Court back into the complexity and confusion that the Notes on Use to MAI–CR 2.20 were designed to avoid. I believe that the wisest course is to avoid passing on the adequacy of a juror's preconceived notion of "reasonable doubt" altogether. Because permitting a juror to be challenged for cause based on the juror's definition of "reasonable doubt" would require the courts to formulate a model definition of "reasonable doubt", and because courts are no better able to avoid confusion than are jurors when they undertake to define "reasonable doubt" in terms of something else, I do not believe that a challenge of a juror for cause should ever be granted solely on the basis of the juror's preconceived definition of "reasonable doubt". This is not to say that a challenge of a juror for cause could not be based on answers indicating an unwillingness to obey the court's instructions on, e. g., the state's burden of proof, or an answers that provide other evidence of bias.

The challenge for cause is not the only device by which a defendant can participate in the selection of his jury, however. The right to use peremptory challenges is granted by statute. § 546.180, RSMo 1978. The second purpose of voir dire is to permit a defendant to make informed peremptory challenges. The questions which the de-fendant sought to ask in this case could have furthered this second purpose. The trial court's refusal of questions on voir dire relating to preconceived notions as to the meaning of "reasonable doubt" went well beyond recognition of the futility of attempting to define a legal standard for reasonable doubt. This refusal amounted to a denial that such questions could elicit information that would be useful to a defendant in identifying jurors that he would want to include in his peremptory challenges. I think that such a limitation violates the principle that broad examination is permitted in voir dire. "Since bias often lies deep within the minds of prospective jurors, counsel should be allowed a wide latitude to expose that bias." *Brown,* 547 S.W.2d at 799.

Conceivably, a very tall or very fat person charged with a crime might want to determine whether prospective jurors were hostile toward tall people or fat people. A defendant with shifty eyes and a heavy beard might desire to use his peremptory challenges to remove prospective jurors who harbor latent prejudices against people with shifty eyes or heavy beards. It would not be appropriate for a trial judge to so limit a defendant's inquiry on voir dire that he could not elicit information about such prejudices, even though such petty biases might not support a challenge for cause. Accordingly, if a defendant wishes to use the peremptory challenge device to remove a prospective juror who entertains a notion of "reasonable doubt" that the defendant believes might decrease his chances of winning a verdict, he should be permitted to do so. A defendant should not be hampered in his inquiry into a juror's preconceived notion of "reasonable doubt" for the purpose of informing himself whether he should challenge the juror peremptorily.

The right of a defendant to inquire as to a juror's preconceived notion of the meaning of the phrase "reasonable doubt" for the purpose of making peremptory jury challenges requires that the judgment be reversed and the cause remanded for a new trial.